CHARLES STARBIRD, Respondent, *v.* SAMUEL H. BARRONS and others, Appellants.

When the plaintiff is to transport a cargo to be delivered to him by the defendant from Rochester to New York, by way of the canal, and the plaintiff's boat, being frozen up in the canal on its passage, is injured by measures taken by the defendant to preserve the cargo.—*Held*, in the action brought by the plaintiff against defendant for the injuries so done to his vessel, that evidence of a counter claim, existing in favor of defendant against plaintiff, for damages occasioned to the cargo, by the alleged improper delay of the plaintiff in prosecuting his voyage, was admissible, and that its rejection was error, there being conflicting evidence as to whether there had been such improper delay.

When evidence has been improperly rejected and the judgment is sought to be sustained on the ground that the facts established by the verdict,

show that the evidence, if admitted, would not have changed the result, it must appear that such is *necessarily* the effect of the verdict; not that the jury *might*, but that they *must* have found as claimed.

(Argued November 25th, and decided November 29th, 1870.)

APPEAL from a judgment of the General Term of the Supreme Court, in the seventh judicial district, affirming a judgment entered at the Monroe County Circuit. This case was previously before this court, but upon a different question. (38 N. Y., 230.)

The facts in the case sufficiently appear in the opinion of the court.

*George F. Danforth*, for the appellant, insisted, that the evidence rejected was material. (*McIntyre* v. *Clapp*, 31 N. Y., 569; *Kent* v. *Hudson R. R. R. Co.*, 22 Barb., 278; *Boston Silk and Woolen Mills* v. *Eull*, 37 How., 299; *Weeks* v. *Pryor*, 27 Barb., 81.) As to the measure of damages, *Finch* v. *Brown* (13 Wend., 603); *Paige* v. *Hazard* (5 Hill, 603); *Decker* v. *Myers* (31 How., 372); *Armstrong* v. *Smith* (44 Barb., 120); *Van Deusen* v. *Young* (29 N. Y., 9).

*George Truesdale and H. R. Selden*, for the respondent, cited *Clendaniel* v. *Tuckerman* (17 Barb., 184); *Cross* v. *Beard* (26 N. Y., 85); Abbot on Shipping, 314; *Horn* v. *Bensusan* (9 C. & P.; 38 C. L., 709); *Kell* v. *Anderson* (10 M. & W., 498); Sedgwick on Damages, 3 ed., 359, note 2; 1 Starkie, 2 E. C. L., 477; *Milner* v. *Tucker* (1 C. & P., 15); *Cash* v. *Giles* (3 id.); 14 E. C. L., 407; *Grening* v. *Mendhalm* (1 Starkie, 257); *Reed* v. *Randall* (29 N. Y., 358, 362-3); *Leavenworth* v. *Packer* (52 Barb., 132); *Gates* v. *Preston* (41 N. Y., 113).

RAPALLO, J. The plaintiff was, in November, 1858, the owner and navigator of a canal boat running between Rochester and New York, via the Erie canal.

HAND—VOL. IV.    26

On the 10th of November, 1858, while his boat was lying at Rochester, he entered into a contract with the defendants, to receive on his boat about 5,000 bushels of potatoes and transport them to the city of New York for the defendants, before the close of navigation. The plaintiff claims that he entered into this contract under an express stipulation on the part of the defendants, that they would load his boat within three days; that in violation of this stipulation, they consumed eight days in the loading, and that by reason of this delay the plaintiff's boat was unable to get farther than Schenectady, where she was stopped by the ice, and obliged to remain until the following spring.

The plaintiff further alleges that after arriving at Schenectady, he, at the request of the defendants, permitted them to take charge of the boat and to put a covering on her to protect the potatoes from frost, the defendants agreeing to compensate him for any injury they might do to the boat.

That they did injure her permanently while under their charge. Also, that after the arrival of the boat at New York the defendants detained her there an unreasonable length of time in unloading, and for all these matters the plaintiff claims $1,200 damages.

The defendants controvert these allegations, and allege that the delay in getting the boat through to New York was owing to the default of the plaintiff, and they seek to recover, by way of counter-claim, losses which they sustained by the depreciation of the potatoes, and by the freezing of a portion of them.

The evidence was conflicting as to the agreement to load in three days.

The plaintiff testified positively to the agreement; but one of the defendants, Barrons, through whom the contract was made, testified that there was nothing said about the time, only he was to load as soon as he could.

Evidence was given as to what was a reasonable time for loading.

There was also some evidence on the part of the defendants tending to show that notwithstanding the delay in lading, the plaintiff could have passed through the canal before navigation was closed.   That another boat which started later than the plaintiff got through to the Hudson river, and that the plaintiff did not provide a sufficient number of horses to draw his boat.  That, during a portion of the time, the boat was drawn by but one horse, and that the plaintiff declined to avail himself of the offer of the defendants to furnish an additional horse.

Also, that three days before the plaintiff actually started from Rochester, and when he had about 4,300 bushels on board, the defendants requested him to proceed, if he thought there was any danger of his not getting through, offering at the same time to allow him for a full load.

The evidence on all these points was conflicting.

The plaintiff gave evidence tending to show that he could not have got through, if he had started later than Saturday, the 13th November.   That by reason of defendant's delay he did not get off till Thursday, 18th of November.   That the defendant, Barrons, went with him all the way, and said that the plaintiff had done all that he could, and that no blame could be attached to him.   The defendant, Barrons, although a witness on the trial, did not deny that he had made this statement.

The plaintiff further proved that on his arrival at New York the defendants gave him a receipt for the cargo and paid the freight.

Upon the trial, evidence was offered by the defendants to sustain their counter-claim.   The court rejected the evidence, and ruled that the defendants could not recover any damages on account of the potatoes being frozen, or on account of the difference in price in the spring and fall.

The counsel for the defendants requested the court to charge, that, if the jury found that the plaintiff was not entitled to recover, and that the 400 or 500 bushels of potatoes were lost to the defendants through the negligence of the

plaintiff, the defendants were entitled to recover such loss by way of recoupment or counter-claim. This request was refused. Exceptions to these decisions were duly taken by the defendants.

The principal question presented by this appeal is, whether the judge erred at the trial in his rulings respecting the defendants' counter-claim, and in excluding the proof offered as to the damages claimed thereunder.

For the reasons stated in the opinion of the court at General Term, we concur with it in holding that there was sufficient evidence in support of the counter-claim, to require its submission to the jury, and also, that the payment of freight, and the evidence as to the admission of the defendant Barrons, exonerating the plaintiff from blame, were not conclusive against the counter-claim.

The defendants' exceptions to these rulings are, therefore, well taken, and entitle them to a reversal of the judgment, unless it clearly appears that they were not prejudiced by the errors.

It is claimed, that the verdict shows that the rulings complained of were of no importance, inasmuch as the effect of the verdict is to find, that the delay in the transportation was caused by the default of the defendants, and the breach of their agreement.

To sustain the judgment on this ground, it must be made to appear that such is necessarily the effect of the verdict. It is not enough, to show a probability that the jury found as claimed. It is necessary to show, that they *must* have so found. It is a general verdict; and unless it can be sustained, only on the ground that the plaintiff was not in default, and that the delay in the transportation, was owing to the default of the defendants, it cannot be regarded as conclusive upon those points.

It becomes necessary, therefore, to examine the claims made by the plaintiff and involved in the action. They are three:

1st. For the breach of the alleged agreement to load the boat in three days.

2d. For the injury done to the boat, by the defendants, while under their charge at Schenectady, and

3d. For the unreasonable detention of the boat in New York.

By a reference to the complaint, it will be found that the last two claims are larger than the first, and by reference to the evidence and the charge, it appears that the claim for the injury done to the boat, is the principal claim in the action, and that the damages proved in that respect are equal to the amount of the verdict.

This claim is wholly independent of the original contract; and if the testimony on the part of the plaintiff is to be believed, he would be entitled to recover it, even though he had violated his contract to transport. He might be liable to the defendants for the breach of that contract, and they liable to him for the damages to the boat. There is nothing inconsistent in the two claims.

Let it be conceded that the plaintiff, by his own default, got caught in the ice at Schenectady. He was not, for that reason, bound to permit the defendants to deal with his boat as they did. If for the protection of the cargo, they desired to adopt a course which was injurious to the boat, the permission of the plaintiff to do so, given at the request of the defendants, was a good consideration for their promise to compensate him for such injury as they might do. Each party, in that case, might have a claim against the other; the plaintiff for the injury done to the boat, and the defendants for the delay in transportation.

The plaintiff proved upon the trial, by numerous witnesses, that the effect of covering the boat with manure, while she was loaded with potatoes was to heat her, so as to destroy the paint and caulking, and to take the life out of the timbers and cause them to rot. Several of the witnesses characterized the treatment, as destructive of the boat. The boat also sustained other damages. The damages were estimated at $800

to $1,000. The court in its charge stated that the evidence was, that the boat was damaged to the extent of $800. This was in 1858. This evidence either alone or in connection with the proof as to subsequent delay in New York, would be quite sufficient to sustain the verdict, which was for $900, without resorting to the claim for delay in loading at Rochester, and the losses consequent upon that delay. We cannot therefore agree with the conclusion of the General Term, that in view of the verdict, the evidence offered was immaterial.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All the judges concurring for reversal.

Judgment reversed and new trial ordered.