### INSURANCE COMPANY *v.* HIGGINBOTHAM.

1. A policy of life insurance, dated July 16, 1869, stipulated for the payment of the annual premium on or before twelve o'clock on the sixteenth day of July in every year; and provided that, in case it should not be paid on or before the day mentioned, at the home office of the company, or to agents when they produced receipts signed by the president or the treasurer, then, and in every such case, the company should not be liable to the payment of the sum insured, or any part thereof, and that the policy should cease and determine. The premium due July 16, 1870, was not paid when due. On the 1st of October following, the insured made application for the reinstatement of the policy to the company, paid the premium, received the agent's receipt therefor, and gave the latter his certificate of health and his certificate of examination, signed by the physician of the company, which were forwarded to it at its home office. The renewal receipt, bearing date July 16, 1870, was, Oct. 12, sent by the company to the agent, who delivered it on the 14th to the insured, without inquiry or information as to his health. *Held,* that the representations of the insured as to the condition of his health on the 1st of October, when he applied for the reinstatement of his policy, and paid the premium, were not continuous until the 14th of that month; and that the contract was consummated on the day when the premium was paid.

2. The ruling in *Insurance Company* v. *Newton,* 22 Wall. 32, touching the effect, as admissions for or against an insurance company, of facts set forth in the preliminary proofs of death, reaffirmed.

ERROR to the Supreme Court of the District of Columbia.

The facts in the case are fully set forth in the opinion of the court.

*Mr. Frederick T. Frelinghuysen* and *Mr. J. Hubley Ashton* for the plaintiff in error.

*Mr. A. G. Riddle* and *Mr. Francis Miller,* contra.

MR. JUSTICE HUNT delivered the opinion of the court.

This was an action by Mrs. Martha J. Day against the Mutual Benefit Life Insurance Company, incorporated by the State of New Jersey, to recover the amount of a policy of insurance issued to her upon the life of her husband, the late Dr. Richard H. B. Day, of Washington, in which judgment was rendered against the company for the amount insured, $5,000 and interest. Mrs. Day having died *pendente lite*, her administrator was substituted here in her stead.

The policy, dated the 16th of July, 1869, was for life, and stipulated for the payment of the annual premium of $137.50 on or before twelve o'clock on the sixteenth day of July in every year; and provided that, " in case the said premium shall not be paid on or before the several days hereinbefore mentioned for the payment thereof, at the office of the company, in the city of Newark, or to agents, when they produce receipts signed by the president or the treasurer, then, and in every such case, the said company shall not be liable to the payment of the sum insured, or any part thereof, and this policy shall cease and determine."

The first premium was duly paid; but when the next premium became due, on the 16th of July, 1870, it was not paid.

In the following October, Dr. Day made application to the company for the reinstatement of the policy; and the company consented to reinstate it, upon the conditions and in the manner following: —

On the 1st of October, 1870, Dr. Day paid the premium to the agent of the company at Washington, and received a receipt for the same. At the same time, he gave to the agent his certificate of health, and the physician of the company signed his certificate of examination, which were forwarded to the company at Newark, N. J.

The policy was renewed, and the renewal receipt was sent by the company to its agent, Oct. 12, 1870. This receipt was dated July 16, 1870, and was given to Day on the 14th of October.

On the twenty-second day of January following, Dr. Day died.

Eleven special pleas are interposed, to which it is not necessary particularly to refer, as the questions to be decided arise upon the rulings of the judge at the trial, made upon points not connected with the pleadings.

The chief subject of contention arises upon the refusal of the judge to charge as requested by the defendant in the following prayers : —

1. If the jury find from the evidence that the certificate of health in evidence was made by Dr. Day, the insured, on or about the 1st of October, 1870, and by him delivered to the agent of the defendant, at Washington City, and by such agent sent to the principal office of the defendant, at Newark, N. J., and that the receipt in evidence, dated July 16, 1870, was thereupon forwarded from the main office of the defendant to its agent at Washington City, and by him delivered to the insured on or about the fourteenth day of October, 1870, and that between the time when said certificate was made and the time of the delivery of said receipt to the insured, Dr. Day had had any derangement of health, and did not disclose that fact to the agent of the defendant when the receipt was handed to him by the agent, or before, they will render a verdict for the defendant upon the sixth plea.

2. On refusing to instruct the jury as prayed by defendant, as follows: If the jury find from the evidence that when the certificate in evidence, dated Oct. 1, 1870, was given to the agent of the defendant at Washington City, the latter was not authorized to and did not assume to reinstate the policy in suit, but accepted the premium and forwarded the certificate to his principal, and that the receipt in evidence, dated July 16, 1870, was then in the home office of the defendant, in New Jersey, and that said receipt was forwarded to the agent of the defendant on or about the twelfth day of October, 1870, and by him delivered to the insured on or about the fourteenth day of the same month ; and if the jury further find, that, after the date of said certificate, and before the delivery of said receipt to the insured, the insured had had any derangement of health, or that at the time of the delivery of said receipt to him he was not in sound health, — they would render a verdict for the defendant.

The state of Dr. Day's health during the summer and autumn of 1870 was the subject of contradictory testimony. The defendant gave evidence tending to prove that he was compelled by ill-health to give up his business as a teacher on the eighteenth day of October, 1870; that for several weeks prior to that time he was much debilitated, and was conscious of that fact; that in November he had the consumption, of which he died in January following; and that he was in feeble and disordered health from the spring of 1869 until his death. The plaintiff, on the other hand, gave evidence tending to show that he was in sound health till the latter part of October, 1870, and that he did not have the consumption until the month of November, 1870.

The exceptions we are to consider assume that on the first day of October, 1870, when he presented his certificate of health to the agent at Washington, Dr. Day was in a condition of health that made him a satisfactory subject for the reinstatement or continuance of his policy of insurance.

It is contended that between the time of thus making and presenting his certificate to the agent and the date (fourteen days later) on which the agent delivered to him the receipt by which his insurance policy was continued in force until July 16, 1871, there had been a change in his health which would have caused the rejection of his application to continue the policy had such change been made known to the company, and that the failure to make known such change was a fraud, which invalidated the policy thus renewed or continued.

It is not contended that there were any false representations made on the 14th of October, or any devices or contrivances to deceive the company. No affirmative action on that occasion is complained of. The contention is that the representation made on the 14th of October was a continuing one, from the time it was made till the delivery of the renewal receipt on the 14th, and that, if not true at the latter date, the contract was avoided.

In reaching a conclusion on this point, we may notice, 1st, that no inquiry was made of Day or demand for information as to his condition between the 1st and the 14th of October. The company was particular and specific in its inquiries as to

his condition on the 1st of the month, and required prescribed forms of evidence as to that condition. There it stopped, and neither by expression nor by implication intimated a desire for later information.

It is to be observed, secondly, that the issuance made to him on the 14th of October relates back to the 16th of July in the same year. The certificate reads: "Policy No. 59,687, on the life of Richard H. B. Day, is hereby continued in force for one year from date, July 16, 1870, settlement of the premium having been made as per margin." The settlement in the margin showed the payment of $137.50, being the amount of the premium of insurance for one year on the sum of $5,000, as stated in the original policy of insurance.

It will be observed, thirdly, that the distance between Washington and Newark is about two hundred miles only, and that the certificates of Dr. Day's health and the application which were forwarded by the agent to the company at Newark would, in the ordinary course of the mails, reach the office at Newark on the morning or during the day of the 2d; that all the forms of the company to authorize a renewal were complied with, and that the risk was such as the company would accept as a desirable one, and that the receipt for the renewal was received in Washington on or about the 14th of October, and was on that day delivered to Dr. Day.

The prayer of the insurance company did not include a request that the jury should determine as a matter of fact whether, upon the evidence submitted, the representation was or was not a continuous one, whether the contract was consummated on the 14th of October, or by relation on the 1st of October; but the judge was requested to charge, as a matter of law, that the representation was a continuing one.

The facts referred to, we think, show that, although actually completed on the 14th of October, the jury would have been warranted in finding that the contract was understood and intended by the parties to take effect by relation as of the 1st of that month. The money was paid to the agent at Washington on that day. The insurance was post-dated so as to include that day. The full amount of the premium for one year was paid by the applicant, viz., $137.50. The company cut off the

insured from two and a half months of his policy when they issued it on the 1st of October, and dated it as of July 16, although taking payment of the premium for a year. We think that they did not necessarily intend to cut off an additional fourteen days, but may have meant it to be as of the date when the insured paid his money and presented a risk that they were willing to take, and of the time that it would have taken effect if they had responded without a delay of two weeks. Had it been otherwise, we cannot conceive how the sagacious business men who control this company would have assented to the delivery of the policy without inquiry as to the intermediate time. More than three months elapsed before Day's death, monthly returns being made by the agent; and the company must have known and assented to the delivery of the renewal receipt not only, but to the fact that there had been no inquiry or information as to Day's health after Oct. 1. The jury might account for it on the theory that the whole contract was intended to be and was as of Oct. 1, and that it spoke from that date.

There is every indication that Day thus relied upon that contract, nor is there any reason to believe that he intended to deceive or to conceal. The company made inquiries to its own satisfaction, so far, in such direction, upon such points, and within such periods, as it thought proper. It was not for him to advise the company of what it should do, or to volunteer information which it did not seek. He paid his money, delivered his certificate, received the renewal when the company chose to give it, found upon examination that it covered the whole period from the July preceding. He lived in the same town with the agent, and received no suggestion from him that any thing further was expected, and was warranted in assuming that his contract was intended to take effect from an earlier period than its actual delivery. He probably died in the honest belief that he had thus provided for his widow. It would be far from good faith to his representatives should it now be held otherwise.

In *Colt* v. *Phœnix Fire Insurance Co.*, 54 N. Y. 595, it is said: "The defendant must not be made liable, where by the terms of the contract it is fairly exempted, however harsh the

result may appear; nor can it be excused where the exemption is claimed upon a strict and rigid interpretation of words, without regard to the circumstances surrounding the transaction, and the apparent intent of the parties." See also *Tipton* v. *Feitner*, 20 id. 423.

In May on Ins., sect. 190, it is laid down : " Where renewals are made upon the statements in the original application, whether the truth of the statements is to be tried by the cir cumstances existing at the time of the renewal or at the time when the original application was made, is a question upon which the authorities do not agree ; some taking the view that a renewal makes a new contract, and others that it merely continues the old one. Special circumstances, however, seem to control the decision, according as these circumstances indicate the intent of the parties."

If we assume it to be true, as a general proposition, that the policy speaks from the date of its issue, and that the obligation of the applicant to make a full disclosure continues down to the completion of the contract, and that the occurrence of a material change before the contract is consummated must be communicated to the company, we do not advance essentially in the case before us. The question recurs, When was the contract of Dr. Day consummated? If on the 14th of October, when the renewal receipt was delivered, as the company contends, then the rule mentioned bars the plaintiff's right to recover. If, as the plaintiff contends, the contract, by the intention and understanding of the parties, relates to the 1st of October, when the premium was paid by the applicant and the certificates of health presented and transmitted, or to a point of time within a few days thereafter, within which the company ought to have examined and to have accepted a risk in all respects suitable to be accepted within its own rules, then the general rule quoted is not applicable. The case is governed by different principles. It is not necessary, therefore, to question the principle assumed in the authority quoted, or to examine the cases cited to sustain it.

We are of the opinion that the exceptions to the charge of the judge, upon the theory that the representations by Dr. Day were made on the fourteenth day of October, or that conceal-

ment was then practised by him, on the ground that the previous representations, necessarily and as a matter of law, were continuous, and that the contract was consummated on that day, cannot be sustained. It was a question proper under all the circumstances for the consideration of the jury. If they had found for the plaintiff, we are of the opinion that the verdict would not have been vacated as being without or against the evidence.

In many English companies a formal acceptance of the proposal for insurance is issued. In some companies this acceptance is unconditional, so that the premium be paid within the month, the letter of acceptance running to the effect that the proposal has been accepted, and that a receipt is ready at the office for the premium, upon the payment of which the assurance will commence; but that, if the same be not paid within thirty days, a reappearance and fresh certificate will be required. In other companies the acceptance is qualified by the condition, not only that the insurance shall not commence till the payment of the premium, but that no material change shall have occurred prior thereto. Bunyon, 58, cited Bliss, sect. 99.

The practice is not uniform, and there is nothing remarkable in allowing a certificate of health to stand good for thirty days, no reappearance or examination for that interval being required.

Among the cases relating to this subject, the following may be referred to as showing the effect of the contract by relation, and that the consummation of the contract does not necessarily depend upon the delivery of the policy.

In *Lightbody* v. *The North American Insurance Co.*, 23 Wend. (N. Y.) 18, it was held that a policy bearing date on the day the premium is paid takes effect by relation from that day, although the policy be not delivered for several days afterwards. In this case, the buildings were burned on the day after the premium was paid and before the policy was delivered.

In *Perkins* v. *Washington Insurance Co.*, 4 Cow. (N. Y.) 645, the rule was applied in a case where the agent was authorized to make insurances, " provided the office shall recognize the rate of premium, and be otherwise satisfied with the risk." It was

held that the company was bound to issue a policy where the insurance was a proper one and the premium was paid or tendered, although before the premium was received at the home office the property was consumed by fire.

In *Chase* v. *The Hamilton Insurance Co.*, 22 Barb. (N. Y.) 527, the agent forwarded a proposition for insurance, which was altered by the company, and the alteration communicated to and accepted by the applicant, and the premium paid to the agent. Held, that the company was bound to issue its policy, and was liable for the loss.

In *Insurance Company* v. *Webster*, 6 Wall. 129, the party having received his policy, it was held that he was not affected by afterwards signing a memorandum that the insurance was to "take effect when approved by E. D. P., general agent." See also *Cooper* v. *The Pacific Mutual Life Insurance Co.*, 3 Big. Ins. 656; 7 Nev. 116; *Carpenter* v. *Mutual Safety Insurance Co.*, 4 Sandf. (N. Y.) Ch. 408; *American Horse Insurance Co.* v. *Patterson*, 28 Ind. 17; Bliss, sect. 172; *The City of Davenport* v. *Peoria Marine and Fire Insurance Co.*, 17 Iowa, 276; *Lefavour* v. *Insurance Company*, 2 Big. Ins. 158.

At the close of his charge, the judge instructed the jury as follows: " That the plaintiff is not responsible for or in any way affected by any of the statements in Dr. White's affidavit, unless the jury find that before and at the time of filing it with the agent of the company she had actual knowledge of its contents, and adopted and used them as her own declarations. That affidavit is her declaration or no, as she knew and was advised of it and procured and approved it." To which instruction the counsel for the insurance company then and there excepted.

In establishing her case at the trial, the plaintiff was bound to prove that notice of the death of her husband, Dr. Day, had been given to the company, and that a demand of payment of the amount claimed had been made. For that purpose only she offered in evidence the proofs of loss which had been furnished to the company, except the affidavit of Dr. White, forming a part of the same, which she did not offer in evidence. Those proofs contained the sworn statement of Mrs. Day herself, the sworn statement of Dr. Isaac White, certificates of

the clergyman and undertaker, and proof of identity by J. F. Patterson.

These affidavits were all on one paper, and the court required that the proofs of loss should be put in as an entirety; that is, that all the papers containing the preliminary proofs should be put in evidence; and the same were thereupon put in evidence by the plaintiff, including the affidavit of Dr. White. In Dr. White's affidavit thus introduced occurred the following questions and answers: " ' How long have you known the deceased?' — ' I have known Dr. R. H. B. Day seventeen years.' — ' How long was deceased sick?' — ' About five months.' — ' Date of your first visit?' — ' Nov. 28, 1870.' — ' Date of your last?' — ' Jan. 22, 1871.' — ' Of what disease did he die?' — 'Pulmonary consumption.' " It appeared further that Dr. White was not a resident of Washington, but left that city immediately after making the affidavit mentioned, on the 28th of January, 1871.

Mrs. Day testified that Dr. White had not seen her husband at any time between September, 1869, and the latter part of November, 1870.

The struggle as to Dr. White's affidavit and the ruling upon it are quite immaterial. He stated in answer to one of the questions that Dr. Day had been ill about five months, and, as he died on the 22d of January, 1871, this would carry his illness back to the 22d of August, 1870, of course, including all the month of October of that year. The insurance company apparently sought the benefit of this evidence on the contest in regard to Day's health.

It is, however, manifest that White's statement was not one of personal knowledge, but was upon rumor, or made without sufficient reflection. This is evident from the testimony of Mrs. Day, which is entirely unimpeached and uncontradicted, that Dr. White did not see her husband during all of the year 1870 until the latter part of November. Upon this subject she could not well be in error. It was equally evident, from the statement of White himself, that his first visit to Day was on the 28th of November, 1870.

Day's bodily health on the first day of October, 1870, was satisfactory to the company, and the attempt was to show an

unfavorable alteration between that date and the 14th of the same month. But White had not seen him during those fourteen days, nor for months before, nor for more than six weeks afterwards.

Whether the presentation of the affidavit of White by Mrs. Day made its contents evidence, whether she knew its contents or not, whether she did or did not adopt or procure it, was not of the slightest consequence. The paper contained nothing that was legal evidence upon the point in issue; and a verdict founded upon it could not have been sustained. The disposition of the subject by the judge was one that could not possibly work legal injury to the insurance company. There was, therefore, no error. *Starbird* v. *Barrons*, 43 N. Y. 200; *Pepin* v. *Lachenmeyer*, 45 id. 27; *The People* v. *Brandreth*, 36 id. 191; *Porter* v. *Ruckman*, 38 id. 210; *Corning* v. *Troy Iron and Nail Factory*, 44 id. 577.

The effect of facts set forth in preliminary proof as admissions is discussed in *Insurance Company* v. *Newton*, 22 Wall. 32. Where an agent of the insurance company stated that the proofs were sufficient to show the death of the insured, but that they showed that he committed suicide, it was held that the whole admission must be taken together. Where the party or her agent stated in the preliminary proofs that the deceased had committed suicide, furnishing the verdict of a coroner's jury to that effect, and where the narration of the manner of the death of the deceased was so interwoven with the death of the deceased that the two things were inseparable, it was held that the whole was competent to go before the jury.

We see no occasion to question the positions of that case.

Upon the whole case, we are all of the opinion that the judgment must be affirmed; and it is                    *So ordered.*