## BURDICK v. HAGGART.

1. NEW TRIAL—MISCONDUCT OF COUNSEL—DISCRETION OF TRIAL COURT.

The granting or refusing a new trial on account of misconduct of counsel during the trial is largely a matter of discretion on the part of the trial judge; and an order refusing a new trial in each case will not be disturbed unless it clearly appears that the trial court has abused its discretion.

2. APPLICATION OF RULE.

When it is not evident that misconduct of counsel either prevented appellant from having a fair trial, or influenced the jury to find a verdict against him contrary to the real weight of the evidence; nor any well founded or satisfactory inference that such was or might have been its effect, there was no error in refusing a new trial.

3. PREJUDICIAL ERROR—EXCLUDING OR RECEIVING EVIDENCE—TRUE TEST

Error in excluding legal evidence or admitting legal evidence, is not of itself sufficient ground for reversal. It must appear, or the presumption be strong, that appellant was prejudiced thereby. The true test is: ignoring the illegal evidence admitted, and considering the legal evidence excluded, would there still be good ground for the ver-

dict as rendered; or could the jury have arrived fairly at a verdict wholly or in part favorable to appellant. CHURCH, J., dissenting.

Filed February 16, 1885.

Appeal from the district court of Cass county.

No briefs on file.

*Jas. E. Robinson,* for appellant.

*Miller & Green,* for respondent.

FRANCIS, J. This case comes before the court on appeal from the district court in and for the Third judicial district, county of Cass, and involves the ownership of a span of horses levied upon and taken by the respondent, sheriff of said county of Cass, under and by virtue of a writ of attachment. The first error assigned by the appellant is the refusal to grant a new trial. The motion for new trial was based upon alleged misconduct of the counsel for respondent in making repeated and persistent offers of incompetent apd irrelevant testimony, containing insinuations and charges prejudicial to appellant, and in making slanderous statements concerning appellant, in his argument before the jury, of which there was no evidence, and in continuously urging the appellant's alleged domestic infelicity and sexual relations as proof against his title to the team in question in the case. And it is claimed that appellant was thus denied a fair trial. The granting or refusing a new trial certainly under such circumstances, is largely a matter of discretion on the part of the trial judge to whom the application is made, and who, as an actual participant in and observer of the matters and events upon which the motion is based, is familiar with their form, substance, extent and situation; and his action in refusing a new trial will not be disturbed by this court, unless it clearly appears that by such refusal some acknowledged and vital legal principal has been ignored or violated, to the prejudice of the party claiming to be aggrieved, and manifest injustice has thereby resulted.

If the appellant, at the hearing in the district court, was prevented from having a fair trial, or if any of his rights at issue in the trial were prejudiced by the misconduct of respondent's counsel, (either in repeated or persistent offers of incom-

petent and irrelevant testimony, containing insinuations and charges prejudicial to appellant, or in slanderous statements made in addressing the jury,) or if such misconduct prompted or influenced the jury to render a verdict not warranted by the evidence in the case, or a verdict against the appellant which they presumably would or could not reasonably have rendered had there been no such misconduct, then a new trial should have been granted. If we blot from the case all the alleged misconduct of respondent's counsel, both as to testimony offered and statements made in argument, the verdict found by the jury would still be warranted by the evidence, in the exercise of sound reason, just discrimination, and fair judgment. If, then, in the *absence* of such alleged misconduct the jury would have been justified in rendering the verdict against the appellant found in this case, it cannot well be argued that the same verdict, arrived at in the *presence* of such alleged misconduct, should be set aside because of such misconduct. It is not evident that the said misconduct of respondent's counsel either prevented the appellant from having a fair trial, or influenced the jury to find a verdict against him contrary to the weight of the real evidence submitted before them; neither is there any well founded or satisfactory inference that such was or might have been its effect, and there was no error in the refusal of the district judge to grant a new trial.

In announcing this conclusion we are not to be taken as, in any sense, excusing or indorsing any misconduct, either in act or utterance, of the counsel for respondent. In the trial of a cause it is always incumbent upon counsel, as it is upon the court, as the representatives of a noble profession, to exemplify those principles of true courtesy, professional honor, and dignified manliness which, in their frequent and prevalent exercise, by court and bar, for many generations, have given to the law and its administration continued stability and usefulness, and adorned the forum of justice with their spirit and grace. A court is, in a peculiar sense, the guardian of all litigants who enter its precincts for judgment, and, having regard to the varied differences in the temperament, education, ex-

perience, refinement, and sensibility of practitioners, should
exercise care and authority to prevent the license by long usage
accorded to counsel, for the very purpose of the better defense
of the rights of their clients, from being improperly used as an
assaulting weapon to prejudice, impair, or destroy those of the
opposite party, or as the means of a departure from the ancient,
well-defined, and plainly recognized lines and regulations estab-
lished and governing in the arena provided for combats in law.
And the court should not wait to see the effect of such an as-
sault or departure, but should promptly arrest any attempt to
seriously disregard those rules of legal procedure and decorum
at least as old as this license accorded to counsel.

The reasoning we have applied to the first assignment of
error also covers the second, third, fourth, fifth, sixth, seventh,
eighth, and ninth assignments of error, which relate to rulings
of the court, during the trial, in admitting or excluding evi-
dence.  Error in excluding legal evidence, or in admitting
illegal is not of itself sufficient ground for reversal.  It must
either actually appear, or the presumption must be strong, that
the party seeking a reversal suffered or was injured or preju-
diced by reason of the error complained of in some substantial
interest or right involved in the issue raised or covered by the
pleadings in the action or proceeding.  The true test is, ignor-
ing the alleged illegal evidence admitted, and admitting the
alleged legal evidence excluded, would there still be good
ground for the verdict as rendered, or could the jury have fairly
arrived at not only a different verdict, but one in favor, in
whole or in part, of the party asking reversal?  If, upon ignor-
ing the admitted evidence claimed to be illegal, and admitting
the excluded evidence asserted to be legal, it appears that the
jury could not have reasonably found the verdict complained
of, nor any verdict in favor of the respondent, or that they
should, or properly might, have found a verdict for the party
assigning error, then the question of the legality or illegality
of the evidence so admitted or excluded becomes material and
should be determined.  Applying this test to the present case,
it is not necessary to determine which, if any, of the eight

alleged errors just referred to are well assigned in law; for, even admitting them all to be well assigned, it is apparent that they would not be good ground for the setting aside of the verdict, or the reversal of the judgment entered upon it.

The tenth and last assignment of error includes certain portions of the charge of the court excepted to by the appellant. Upon reading the charge, and considering it in connection with the entire case, we are unable to find error in it for any of the reasons set forth in said tenth and last assignment of error.

The judgment of the district court should be affirmed.

CHURCH, J., *dissenting.* My confidence in the fairness and good judgment of the learned judge before whom this cause was tried is such that I concur with the court in its disposition of the first branch of this case, although I confess that there is much in the matter complained of which it is difficult to excuse or overlook even in this court. I must dissent, however, from the views expressed by the court in relation to the errors assigned in the exclusion of legal evidence and the admission of illegal evidence. It is doubtless true, as declared by the court, that such errors are not in themselves sufficient ground for reversal. But the court further says: "It must either actually appear, or the presumption must be strong, that the party seeking a reversal suffered, or was injured or prejudiced, by reason of the error complained of, in some substantial interest or right involved in the issue raised or covered by the pleadings in the action." "The true test is, ignoring the alleged illegal evidence admitted, and admitting the alleged legal evidence excluded, would there still be good ground for the verdict as rendered, or could the jury have fairly arrived at not only a different verdict, but one in favor, in whole or in part, of the party seeking reversal?"

The rule thus laid down is open to at least two serious objections. In the first place, it is indefinite and uncertain. The test proposed in the last clause, "Could the jury have fairly arrived at a different verdict?" is far more restrictive than that

proposed in the previous clause, "Would there still be good
ground for the verdict as rendered?" The word "fairly" I take
to mean "reasonably," and I think it would be properly held
that if, under the given circumstances, the jury could not rea-
sonably have found a different verdict, a new trial ought not to
be granted; because, under such circumstances, an adverse ver-
dict would be at once set aside by the court, if, indeed, the
court, in a case presenting such features, would consider it
necessary to submit the matter to the jury at all. But the test
proposed in the previous clause is an essentially different one.
Under the given circumstances, there might still, in the judg-
ment of *this* court, "be good ground for the verdict as ren-
dered;" but that is not the question. The very terms of the
proposition imply that the question before the jury was one of
doubt; and in such cases the jury are the sole judges of the
weight to be given to the evidence. The court has no right to
speculate upon its probable effect in a doubtful case.

Thus we see that the rule as laid down by the court affords
no certain ground to stand upon. It proposes a double test,
the terms of which are inconsistent. But, again, the whole ef-
fect of the rule, as thus declared, is to throw the burden upon
the wrong party. The court say it must actually appear, or
the presumption must be strong, that the applicant was pre-
judiced by the error complained of. It is true that error will
never be presumed, but I think the rule is well established, by
the clear weight of modern authority, that where error in the
admission and especially in the exclusion of evidence in the
course of a jury trial is shown, prejudice to the party aggrieved
will be presumed, and that it lies with the respondent, in such
case, to show clearly that no injury resulted from the error.
Jackson v. Feather River W. Co. 14 Cal. 18; Starbird v. Bar-
rows, 43 N. Y. 200; Baird v. Gellette, 47 N. Y. 186; Foote v.
Beecher, 78 N. Y. 155; Campau v. Traub, 27 Mich. 215; Cop-
page v. Com. 3 Bush. 532.

It is unnecessary to consider here the question whether the
rule would be different in cases tried by the court without a
jury. In the case of Thorndike v. City of Boston, 1 Metc 242,

249, Chief Justice SHAW, after a careful and instructive consideration of the matter, deduces the following rule: "Where evidence has been improperly received or rejected, and the verdict is found against the party taking the exception, and a motion for a new trial is made on that ground, such motion will not be granted if the court can see plainly from the whole evidence that, *independently of the evidence received or rejected,* the evidence in support of the verdict so decidedly preponderates that a verdict the other way would be set aside as against evidence." I have italicized certain words in the above citation for the purpose of calling attention to what would seem an inadvertence in the statement of the rule. Surely, that learned judge did not intend to declare that the preponderance of the evidence was to be determined independently of evidence improperly rejected; for, obviously, such evidence, if admitted, might have overwhelmingly turned the scale. It should be remarked that the error assigned in that case was upon the admission and not the rejection of evidence, which may account for the inadvertence. Doubtless we may substitute for the words in italics the following words employed by Judge SHAW earlier in the same opinion, viz., "rejecting the incompetent evidence which had been admitted, and adding the competent evidence which had been rejected." Thus modified, it seems to me, the rule as stated by the supreme court of Massachusetts is the logical, consistent, and safe one.

It is not essential to my present purpose, nor would it be profitable, to enter into a consideration of the various items of evidence, upon the exclusion or admission of which errors were assigned, since the court have said it was unnecessary to do so, and have declared that "even admitting them (the errors) all to be well assigned, it is apparent that they would not be good ground for the setting aside of the verdict, or the reversal of the judgment entered upon it." But I must be permitted to say that that which is thus declared to be apparent to the court (and this is all they have said upon that subject) is by no means apparent to me, even under the rule so favorable to the respondent, which I have already criticised.

The question at issue was the ownership of certain personal property. That this question was involved in much doubt is evident from the charge of the court to the jury, in which we find frequently repeated observations of this character: "This question is in such a situation that it will trouble you some, perhaps, to determine it." "Possession of personal property by a person is evidence of title in that person; but in this case * * * the relations which they sustained to each other * * * was such that it will be somewhat difficult to determine that question." "Now, the case has been contested pretty strongly here on both sides, and it is a pretty nice question, and you must consider it carefully upon all the evidence." Indeed, it may fairly be said that in almost every sentence of the charge there is some declaration of or allusion to the difficulties presented by this question. Yet it was to this precise question that the evidence referred to related. Some of the evidence excluded was directly to the point that plaintiff owned the team, possessed it, and exercised exclusive acts of ownership of it, and that the judgment debtor, whom defendant sought to charge with the ownership, never claimed to own it. On the other hand, evidence was admitted of declarations by the judgment debtor, which so far as they showed anything, tended to establish his ownership. On both of these points the court below clearly erred; and I think it equally clear that the errors tended materially to the prejudice of the plaintiff. For these reasons the judgment should be reversed, and a new trial ordered.