KERR et al. v. UNION MARINE INS. CO., Limited.

(District Court, S. D. New York. September 3, 1903.)

1. MARINE INSURANCE—ACTION ON BINDING SLIP—JURISDICTION OF COURT OF ADMIRALTY.

An accepted application for marine insurance, or binding slip, constitutes a contract of insurance which will support an action at law, and a court of admiralty has jurisdiction of an action thereon to recover for a loss.

2. SAME—REPRESENTATIONS AVOIDING CONTRACT—CHANGE IN DATE OF APPLICATION.

An application for marine insurance on a cargo, made on a printed form of the company, contained a provision that the insurance was subject to the conditions of the printed forms of policy then in use by the company, which, among other provisions, insured ships "lost or not lost." The application was dated November 4th, and presented to the company on that day by a broker representing the applicants, and left for inquiry respecting rates. It contained a statement that the ship had not sailed. December 12th, applicants having received a letter dated December 3d, stating that the ship would clear on that day, their broker applied to have the insurance made binding; and the company's representative changed the date of the application to December 12th and signed the binding slip. The ship sailed December 4th, and was wrecked and the cargo lost on the 7th, but such fact was not known to the insured. Held, that the statement in the application that the ship had not sailed was not a warranty or representation that she had not sailed on December 12th, but that she had not on November 4th, when the application was dated and presented to the company, and that, having made no inquiry whether she had since sailed, the company must be deemed to have regarded the fact as immaterial, in view of the form of policy used, and was bound by the contract, the ship not being at the time overdue.

In Admiralty. Action on contract of marine insurance.

Butler, Notman, Joline & Mynderse (Wilhelmus Mynderse, of counsel), for libelants.

Albert A. Wray, for respondent.

HOLT, District Judge. This is an action upon a contract ot marine insurance. On November 4, 1901, the libelants, John E. Kerr & Co., merchants, of New York, applied to the respondent, the Union Marine Insurance Company, Limited, for insurance on a cargo of logwood on the brigantine A. Elida, from Black River,

¶ 1. See Insurance, vol. 28, Cent. Dig. § 210.

Jamaica, to New York. The application was made on a printed form used by the respondent. It contained a provision that the insurance was subject to the conditions of the printed form of policy used by the company at its New York agency at that date, which form, among other provisions, insured ships "lost or not lost." The application, when filled out, stated the usual particulars of the vessel, cargo, and voyage. In the space opposite the printed words "Time of Sailing" were inserted the written words "Not sailed." The date "Nov. 4th, 1901," was also written on the application. This application, so filled out, was submitted to an officer of the insurance company by Mr. Woore, a member of the firm of McDowall, Carroll & Co., insurance brokers, representing Kerr & Co. Certain immaterial provisions in the application were changed. Mr. Woore then asked the rates of insurance, which were given, and written upon the application. Mr. Woore then wrote upon the application "Inquiry," to indicate that it was not a complete application, and left it with a representative of the insurance company, who placed it upon a file of pending inquiries. Mr. Woore reported the rates and terms to Kerr & Co., who thereupon endeavored to secure more favorable rates from other companies, and, among other inquiries, cabled to England. While these inquiries were being made, the matter slipped along until the 12th of December, 1901, when Kerr & Co. received a letter from Black River, dated the 3d of December, which stated that "the Elida clears to-day." Kerr & Co. immediately telephoned to McDowall, Carroll & Co. to close the insurance at once. Mr. Woore went to the office of the insurance company, and ascertained from Mr. Whitlock, the representative of the company, that the insurance company was ready to complete the insurance on the terms stated. He reported to Kerr & Co., and was directed by them to close the insurance regardless of rates. Mr. Woore thereupon returned to Mr. Whitlock, and told him that he wanted to make the risk binding, and Mr. Whitlock said that he would bind it for him. Mr. Whitlock then put his initials on the application, under the word "Binding," struck out the word "Inquiry," and struck out the date "Nov. 4th, 1901," and inserted over it the date "Dec. 12/01." Thereupon McDowall, Carroll & Co. notified Kerr & Co. that the insurance was taken. This was about 5 p. m. on the 12th of December. The next morning, December 13th, Kerr & Co. heard that the Elida and her cargo had been lost. She sailed from Black River December 4th, and was wrecked on December 7th on the south coast of Cuba, about 18 miles from Cape Corrientes. The ship and cargo were a total loss. The captain and crew made their way in a small boat around the west end of Cuba until they finally found a fishing vessel, which took them to Havana, a journey occupying five days. The captain reached Havana on December 12th, about 6 p. m. Until he reached there he had no means of communication with New York. He immediately cabled to the agents of the vessel at New York. The cablegram reached New York at 7:04 p. m. on the 12th of December. It was not delivered to the agents until the following morning, and the news reached Kerr & Co., through the agents, that forenoon. Kerr & Co. thereafter duly tendered the pre-

mium, filed proofs of loss, and demanded payment of the insurance, which was refused.

This action is brought upon the binding slip to recover the insurance. The answer alleges three grounds of defense: That the libelants concealed the sailing and the loss, that the vessel was unseaworthy, and that the statement in the binding slip, "not sailed," was a warranty or a representation that the vessel had not sailed on December 12th, which vitiated the insurance. On the trial the respondent's counsel suggested another defense—that this court has no jurisdiction.

In my opinion, there is no evidence that the libelants knew of the loss or concealed it. The evidence is clear and entirely uncontradicted that they did not know and could not have learned that the vessel had been lost until the day after the binding slip was initialed. The defense that the vessel was not seaworthy is also, in my opinion, unsupported by any satisfactory evidence. The defense that this court has no jurisdiction is based on the claim that an action at law cannot be maintained on the binding slip, but only an action in equity to procure the execution of a policy, and therefore, as a court of admiralty has no purely equitable jurisdiction, that this action cannot be maintained. Some of the earlier cases went upon the theory that such a binding slip was merely an agreement to issue a policy, and that the remedy in such a case was a bill in equity, praying to have a policy issued. But it has long since been established that such a binding slip is itself a contract of insurance, and that a direct action at law will lie upon it, as well as a suit in equity. Ellis v. Albany Co., 50 N. Y. 402, 10 Am. Rep. 495; Angell v. Hartford Co., 59 N. Y. 171, 17 Am. Rep. 322. A court of admiralty, of course, has general jurisdiction of suits on contracts of marine insurance. Insurance Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90. I think, therefore, that this court has jurisdiction.

The serious question in this case is whether the statement on the application that the vessel had not sailed constitutes a warranty or a representation which makes the contract void. When the application was filed, on November 4th, the vessel had not sailed. When the binding slip was initialed, on December 12th, she had sailed. The information whether a vessel has or has not sailed is usually material (Johnson v. Phœnix Ins. Co., Fed. Cas. No. 7,405); and if this application had been originally filed on December 12th, and had contained the statement that the vessel had not sailed, I think it would have vitiated the contract, for a contract of marine insurance is one of the strictest good faith, and a material statement in the application which is incorrect vitiates it, whether the person who made it knew that it was incorrect or not. But in this case the statement was true on November 4th, when it was made. If Mr. Woore had presented the application on December 12th, and had stated in it that the vessel had not sailed on November 4th, the statement would have been correct, and I think that that was the legal meaning of the statement in the application as finally accepted. That was the original statement, as Mr. Whitlock knew. No one in behalf of the libelants ever stated that on December 12th the Elida had not sailed. It was Mr. Whit-

lock, and not Mr. Woore, who changed the date. Mr. Whitlock knew that the vessel would sail some time, and as the binding slip provided that the insurance was subject to the conditions of the printed form of policy used by the company, and the form then used insured ships "lost or not lost," I think that the inference to be drawn from the act of Mr. Whitlock in initialing the binding slip as it stood, without inquiring whether the Elida had sailed since the application was filed, is that he did not care whether the ship had sailed or not. If he had cared, it was his duty, in my opinion, under the circumstances, to have inquired. Insurance Co. v. Higginbotham, 95 U. S. 380, 24 L. Ed. 499. The ship at that time had not been out long enough to make her an overdue ship. She sailed on December 4th. The binding slip was signed 8 days after, and the ordinary period for such a voyage from Jamaica to New York was about 20 days. It would appear, therefore, to be in fact an immaterial consideration whether she had sailed or not, to a company issuing a policy insuring the ship lost or not lost. The especial importance of information of sailing is in the case of overdue vessels. Johnson v. Phœnix Ins. Co., Fed. Cas. No. 7,405.

I have examined the cases cited by the respondent. They establish the general principle that any concealment of a material fact vitiates a contract of marine insurance. None of them presents the peculiar features of this case. In the case of Insurance Co. v. Higginbotham, 95 U. S. 380, 24 L. Ed. 499, a written statement of the health of a person insured under a policy of life insurance, which was correct when made, was delivered to the company some time after, and a policy issued on the faith of it. It was claimed that the statement when delivered was false. The court held that it was a question of fact for the jury whether the company understood the statement to refer to the date it was made, or to the date it was delivered. I think that that principle applies to this case, and as, in my opinion, the respondent understood the statement that the Elida had not sailed to refer to November 4th, and not to December 12th, the fact that she had sailed on December 12th did not vitiate the contract of insurance.

My conclusion is that there should be a decree in favor of the libelants for the amount demanded in the libel, with costs, unless the respondent disputes the amount due, in which case the usual reference will be ordered to ascertain the damage.