The Columbian National Life Insurance Co.

vs.   Eq. No. 11658.

Industrial Trust Co. et al.

Elizabeth V. Wholey (Trustee for the use and benefit of Industrial Trust Co.)   Law No. 89402.

vs.

The Columbian National Life Insurance Co.

November 18, 1932.

WALSH, J. These two cases are before us on the motion of Industrial Trust Company to dismiss the bill in equity, the demurrer of respondent, Elizabeth V. Wholey, to the bill of complaint and the motion of the Columbian National Life Insurance Company to stay the prosecution of the action at law pending the determination of the suit in equity.

The bill in equity seeks to rescind the reinstatement of a life insurance policy on the ground that the application for reinstatement contained misrepresentations and false warranties. The policy was issued in 1925 and lapsed for non-payment of a premium note due October 24, 1931. Thereafter, on November 12, 1931, the insured executed an application for reinstatement of the policy as he was allowed to do under the terms of the original policy. In this application for reinstatement the insured stated that he had seen no doctor professionally since his last examination, that he had suffered from no illness since that time and that he was in sound health. On November 12, 1931, the Company physician examined insured and found some impairment in his physical condition for which the Company was to charge an additional premium. The application for reinstatement specifically provided that no reinstatement should be accomplished until formal approval had been given to the application by the Company at its home office in Boston, Mass. The original policy provided: "Should this policy lapse, it may be re-instated at any time upon evidence of insurability satisfactory to the Company and payment of all past due premiums with 6% per annum," etc. The insured agreed to the additional premium for the impairment disclosed by his physical examination, made satisfactory arrangements as to payments of past due and current premiums, and the policy was reinstated January 15, 1932. On January 15, 1932, the Company knew nothing concerning the health of the insured beyond what appeared in the application for reinstatement and the report of examination by the Company physician and there is no allegation in the bill that the Company made any inquiry about the health of the insured between November 12, 1931, the date of his application and physical examination, and January 15, 1932, the date of the formal approval of the reinstatement by the home office in Boston. On December 15, 1931, insured had an attack of angina pectoris. No disclosure of this was made to the insurer. Insured died of angina pectoris in May, 1932.

The policy contained the provision that after one year it should be incontestable save for non-payment of premiums. The provision as to statements by insured, in the policy, is as follows: "All statements made by insured in the application shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid the policy or be used in defense to a claim under it unless contained in the written application and a copy of the same attached hereto." There is no claim by the Company that any of the written statements by the insured are false or fraudulent. They claim that the failure of the insured to communicate the fact of his serious illness to the Company before the Company had approved his reinstatement constituted fraudulent representations or warranties sufficient to avoid the

policy and upon this ground the Company seeks the aid of equity. The filing of the suit in equity by the Company was followed by a suit on the law side of the Court by the beneficiaries to recover under the terms of the policy.

The complainant Company argues that equity having once taken jurisdiction has exclusive authority to decide all incidental matters arising in the cause and that the provision in regard to incontestability in the policy requires the company to protect its rights before the limit of one year expires, otherwise, if the year elapses, they are without remedy. The beneficiaries contend that the allegations of the bill clearly show no reason for the intervention of equity and that there is a complete and adequate remedy at law for the company in the statutory provision allowing equitable defences to be pleaded.

From a careful examination of the authorities submitted, we feel that the contract for reinstatement was made November 12, 1931, subject to formal approval by the home office; that there was no duty upon the insured to disclose voluntarily any changes in his health material to the risk assumed by the Company thereafter unless such information was demanded by the Company; that if the Company had made these demands before its approval and truthful answers had not been made thereto by the insured, a different question would have arisen. A change in the health of the insured between the time of his application for reinstatement and the receipt of the rider formally approving his reinstatement does not avoid the policy since the Company has assumed the risk for that time and has been paid therefor. Representations made by the insured in his application are not continuing representations covering the period between the date of the application and the reinstatement when the policy does not provide that the insured shall be in good health at the time of delivery.

*N. Y. Life Insurance Co.* vs. *Moat's,* 207 Fed. 481 (1913).

The contention that the Company is entitled to equitable relief because of the incontestability clause in the policy and that because of that clause the Company has no adequate remedy at law does not appeal to us. The Company argues that the effect of the incontestability clause was to require the Company to set up its defence of fraud either in fact or in law within one year after the reinstatement of the policy and that at the time of the filing of the present bill, it lay entirely within the control of the beneficiaries to determine whether an action should be brought within said year or not and that if the bringing of the action within the time had not been determined upon, then the Company's defence of fraud and breach of warranty would have been lost forever. This reinstatement was not the creation of a new or different contract between the parties. It cured a lapse in an old contract and reinstated the old contract with all the force and effect it had just before the alleged lapse. This case is to be distinguished from cases requiring insured to be in sound health where the only evidence of sound health is a statement or certificate by insured, which statement is false or fraudulent. The effect of reinstatement is to revive the contract of insurance which is for the time being dormant or unenforceable against the Company. When so reinstated or revived the contract is again in full force and effect to all intents and purposes as if it had never lapsed.

*Bird* vs. *N. Y. Life Ins. Co.,* 47 Ontario 510 (1920).

The respondent, Industrial Trust Company, after having filed an answer to the bill of complaint, now moves to dismiss the bill under the claim that the provision of Public Laws 1931, Chapter 1757, Section 12, requires this matter to be submitted to a jury. The section referred to reads as follows:

"No misstatements made in procuring a policy of life insurance shall be deemed material or render the policy void unless the matter thus represented shall have actually contributed to the contingency or event on which the policy is to become due and payable; and whether the matter so represented contributed to said contingency or event, in any case, shall be a question for the jury."

The interpretation of this section has been considered in *Wells* v. *Great Eastern Casualty Co.*, 40 R. I. 222, and in *Prudential Insurance Co.* v. *Shandel Tanenbaum*, Superior Court of Rhode Island, Eq. No. 7861. Both these cases hold that the statute does not prevent the rescission of a contract for insurance on the ground of fraud in a proceeding in equity either during the lifetime of the insured or after his death. They hold that it was not the intention of the statute in question to prevent a court of equity in a proper case, wherein questions of fraud and of the effect of incontestability clauses are raised, from taking jurisdiction in order to protect the rights of parties thereto. These cases are based upon statements actually made in the application for insurance, upon applicant's own knowledge, which are fraudulent either in fact or in law. We agree with the rule laid down in these cases but feel that they are not decisive of the case before us. Paragraphs eighth and ninth of the bill read as follows:

"Eighth:—On or about the third day of May, 1932, the said Timothy V. Wholey died from angina pectoris and myocarditis. Thereupon proofs of death were filed with the complainant, which proofs included a statement by the attending physician, Dr. M. J. Nestor, of said Providence, that the disease of which he died was first recognized or treated by Dr. Nestor about December 15, 1931. Said proofs of death also contained a statement by his widow the defendant Elizabeth V. Wholey, that his health first became affected in December, 1931. The information from these proofs of death was the first notice or knowledge which the complainant received that said Timothy V. Wholey was not in sound health at the time of the reinstatement of said policy, January 15, 1932. Whereupon the complainant investigated and learned that in December, 1931, the said Timothy V. Wholey had sustained an attack of angina pectoris accompanied by severe painful sensation extending from the shoulder down the arm and hand; and that he had remained in bed on account of this seizure for more than a week."

"Ninth:—The representations and warranties in the application for reinstatement above mentioned were material and related to matters which actually contributed to the contingency or event on which the policy was to become due and payable. If the facts above set forth had been known to the complainant on January 15, 1932, the complainant would not have accepted the cash and notes from the said Timothy V. Wholey and would not have reinstated the said policy. Said representations and warranties were continuing representations or warranties, and the said Timothy V. Wholey before permitting reinstatement of said policy to become effective on January 15, 1932, was bound to disclose the material facts that in December, 1931, he had been taken ill, with angina pectoris, had been treated by a physician and was not then in sound health. When the said representations or warranties in his application for reinstatement became no longer true, he was bound to make full disclosure of these facts to the complainant and his failure to do so entitled the complainant to rescind the reinstatement."

The contention is that Wholey's failure to inform the Company of his

serious illness in December, 1931, before his application for reinstatement had been acted upon and one month after his application had been filled out and filed with the Company, and without any demand from the Company as to the condition of his health in the meantime, constituted such fraud as to give the Company the right to rescind the contract. There is no claim that any of his statements in the application for reinstatement were false. It appears that knowledge of his own serious physical condition could not have come to Timothy V. Wholey until at least a month after his application for reinstatement had been filed with the Company. The Company held his application for more than 60 days before acting upon it. In the meantime, the Company had the report of its examining physician showing Wholey's high blood pressure, had demanded an increased premium for the reinstatement of the policy, said increased premium being based apparently on Wholey's then physical condition. From this information in its possession, it would seem that the Company should have availed itself of a further examination of the insured before reinstating the policy. Wholey might well assume that the Company might inquire about his then physical condition before formally approving his reinstatement. As we have said previously, if the Company had made this inquiry and no disclosure of his illness had been made by Wholey, a much different question would arise. We think that the bill fails to disclose a duty on the part of Wholey to impart this information to the Company under the circumstances of this case. From the allegations in the bill, it would seem that the Company assumed the risk of changes in the health of the insured between the date of his application for reinstatement and the date of its formal acceptance by the Company.

*Insur. Co.* vs. *Higginbotham*, 95 U. S. 380.

Whether the alleged misrepresentations in procuring the reinstatement of the policy actually contributed to the contingency or event on which the policy was to become due and payable and whether such failure to disclose contributed to said contingency or event are questions for a jury under Public Laws 1931, Chapter 1757, section 12.

For the reasons herein set forth, the motion of the Industrial Trust Company to dismiss the bill in equity is granted; the demurrer of the respondent, Elizabeth V. Wholey, to the bill of complaint is sustained and the motion of the Columbian National Life Insurance Company to stay the prosecution of the action at law is denied.

Attorney for complainant: Claude R. Branch.

Attorneys for respondent: Comstock and Canning, John P. Beagan.