SPITLER, Plaintiff-Appellee, v. MONTGOMERY WARD & COMPANY, INC., Defendant-Appellant.

Ohio Appeals, Second District, Franklin County.

No. 5071.   Decided May 24, 1954.

Donald S. McNamara and Keith McNamara, Columbus, for plaintiff-appellee.

Vorys, Sater, Seymour & Pease, James O. Seymour, of Counsel, Columbus, for defendant-appellant.

## OPINION

By THE COURT.

This is a law appeal from the judgment of the Common Pleas Court rendered in favor of the plaintiff-appellee upon the verdict of a jury. The action was one for damages for personal injuries received by the plaintiff as the result of her slipping and falling on the waxed floor maintained by the defendant.

The fourth amended petition charges the defendant with the following acts of negligence:

1. Defendant so waxed or polished its floor so as to allow it to become slippery in spots and not uniform in its entirety.

2. Defendant negligently selected and applied a substance on its floor that prevented the floor from having a uniform surface.

The defendant's answer admitted that the plaintiff fell as alleged in the petition, but denied all other allegations.

The first and second errors assigned urge that the Court should have sustained the defendant's motion for a directed verdict at the close of all the evidence and also its motion for a judgment notwithstanding the verdict. This Court has previously determined that the petition stated a good cause of action. See **Spitler v. Montgomery Ward, 60 Abs 508,** and the cases therein cited. The question now presented is whether the evidence is sufficient to support the same.

We have examined the entire record and are of the opinion that the evidence offered on behalf of the plaintiff, when viewed in its most favorable light, was sufficient to establish a prima facie case. This evidence was to the effect that the surface of the floor was not uniform and it was spotty and that in some places it was rough and in others it was glossy and waxy. The plaintiff testified that where she fell there was a skid mark from her foot "where the wax had rolled up and there was some of it on my shoe, on my heel". In answer to certain interrogatories the defendant stated that Myco-Gloss had been applied to the floor twenty-two days before the plaintiff's alleged injury; that after the same had been applied it was gone over with a buffer. After testifying that on the day in question she was a customer in the defendant's store and had taken the elevator to the third floor and after taking four or five steps when she slipped and fell, the plaintiff testified further concerning the condition of the floor:

"Q. In other words, you pitched forward? A. Yes.

Q. Could you feel the floor? A. Yes, I could feel the floor and I could then feel that it wasn't level, that wherever the high spots, it wasn't near polished as the other parts.

Q. In other words you could feel a difference with your hands. A. Yes, I could.

Q. What happened to you after you fell, did you get up or just what happened? A. No, I had two of the men from the furniture department help me into this glider.

Q. That is the glider right close to where you fell. A. That's right, on the east side of that wall or that archway and one of them handed me my purse.

Q. Did you sit in the glider then a few minutes?  A. Yes.

Q. From the glider could you see the area from which you fell, where you had been walking?  A. Yes, there were dull spots and light spots, from where I sat.

Q. You could see spots that looked dull and spots that looked what?  A. It looked more glossy, the other was dark spots and the other seemed lighter.

Q. And about  how long were you there?  A. Oh, I imagine about ten minutes.

Q. From where you fell, could you see any mark to where you fell? A. Yes, there was a skidmark from my foot where the wax had rolled up and there was also some of it on my shoe, on my heel.

Q. Do you know about how long a mark that would have been, I mean could you just indicate?  A. About 18 or 20 inches (indicating) would that be about right?

         *         *         *         *         *

Q. Commenting on the heel, will you describe what kind of heel you were wearing or heels?  A. I never wear anything but a Cuban, this type of heel, I would say an inch and a half or an inch and three-quarters.

         *         *         *         *         *

Q. Now, yesterday you made a statement in answer to a question that when your hands were on the floor you felt a difference, now, you explain what you meant by that.  A. Well, I felt that there were rough spots in places and glossier in the others, and as I. after I got up and they sat me in the glider, I looked around and I also noticed that there were dull spots and waxy spots in other places.

Q. Now, when you speak of glossy spots could you see or feel as to what made it glossy?  A. Yes, it was waxy, that is, you could feel when you wax your floors between where there is wax and there isn't any wax.

Q. Now do you recall whether or not there was any difference in the actual composition of the floor, by that I mean—  A. It didn't seem level, it seemed like where it was waxier. it was higher, as I put my hand down, my right hand down.

Q. I meant as far as composition was concerned, was it primarily all of the floor covering of the same substance?  A. Material, yes."

We think that this evidence tends to establish that the floor in the defendant's store was not uniform as to its surface in that an entirely different condition existed at the place where the plaintiff slipped and fell.  In other words, that at this place there was a waxy spot and from the evidence an inference may be drawn that the wax on the floor at this particular spot had not been rubbed down or polished, thus presenting a condition or changed condition from that which existed on the other parts of the floor where the plaintiff had been walking.

We therefore conclude that the Court did not err in overruling the two motions for a judgment for the defendant.

It is next urged that the Court erred in refusing to permit the defendant to offer testimony to the effect that Myco-Gloss was used generally by store owners in the treatment and care of asphalt tile floors similar to the one involved in this case.  This evidence, although not conclusive or controlling, should have been admitted.  In **Witherspoon v. Haft, 157 Oh St**

474, the rule applicable to such a situation is set forth in the first syllabus as follows:

"Customary conduct or methods do not always furnish a test which is conclusive or controlling on the question of negligence or fix a standard by which negligence is to be gauged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised."

The rejected evidence was particularly material for the reason that the petition alleged that the defendant was negligent in the selection of the substance used on the floor. The plaintiff claims that the rejected testimony was merely repetitious because the same witness had previously testified that "this material is used in a wide variety of stores * * *". We cannot agree with the appellee on the conclusion that such statement precluded the offering of further testimony on this question. The testimony rejected was admissable and the Court committed error in refusing to allow the same.

It is next urged that the Court erred in giving the following written instruction to the jury before argument:

"The Court instructs you, members of the jury, that the plaintiff may recover damages for the injuries, if any, that she sustained from slipping and falling in the defendant's store, if you find that these injuries were caused by the negligence of the defendant in permitting its floor to be in an unusual and dangerous condition by reason of the fact that it was not uniform as to its surface, in that it was slippery in spots only."

The appellant is contending that the instruction was erroneous for the reason that it assumed the existence of certain facts which were in issue and did not require the jury to pass on the same. Our interpretation of the instruction is in accord with that of the appellant. We think that it assumed that the defendant was negligent; that the defendant permitted its floor to be in an unusual and dangerous condition, and that the same was not uniform in its surface and that it was slippery in spots only. Our attention is called to the case of **Plotkin v. Meeks, 131 Oh St 493**, wherein the following charge was held to be improper:

"If you find from the evidence that the negligence of the plaintiff either directly caused or directly contributed in the slightest degree to cause the injuries of which she complains, your verdict must be for the defendant."

The conclusion of the Court is found on page 497 wherein it said:

"We are of the opinion, however, that the trial court rightly refused to specially charge as requested, and that the Court of Appeals, speaking through Hamilton, J., correctly held the charge improper on the ground that it 'does not leave to the jury the right to determine whether or not the plaintiff was guilty of contributory negligence, but assumes that, and on the assumption charges that if the jury found the negligence of the plaintiff directly caused or contributed to cause the injuries, the verdict should be for the defendant.' In other words, the requested charge is based on the assumption that plaintiff was guilty of negligence and takes the determination of that fact from the jury, submitting to it only the question of proximate cause."

In the case at bar the charge appears to be even more damaging than in the cited case, for it not only assumes the negligence of the defendant, but

also assumes that the floors were in "an unusual and dangerous condition": that it was "not uniform as to its surface" and that "it was slippery in spots only". The appellee urges that the words "if you find" mean that before the jury can award damages to the plaintiff they must find that the plaintiff was injured as a result of the negligence of the defendant in the particulars charged; in other words, that the jury has three things to determine:

(1) Whether the defendant was negligent in the particulars charged; (2) whether such negligence was the proximate cause of the plaintiff's injuries, if any; and (3) the extent of plaintiff's damages. We are unable to place such an interpretation on the instruction. The fact that another special charge was given which instructed the jury that a verdict could be returned for the plaintiff only if it found that the defendant failed to exercise ordinary care to maintain its premises in a reasonably safe condition, does not detract from the wrong in giving the improper charge as contended by the appellee. We are of the opinion that the instruction was erroneous and highly prejudicial. See, also, **Monsey v. Cincinnati St. Ry. Co. 86 Oh Ap 61.** The appellee cites the case of **Rodenfels v. Great Eastern Stages, Inc., 30 Abs 42,** which we think is distinguishable on the facts from the case at bar.

The two issue rule urged by the plaintiff cannot be applied for the reason that, as we view it, there was only one issue in the case, to wit: was the floor of the defendant in a dangerous and unsafe condition? The manner in which it became in such condition is merely evidence   But even conceding for the sake of argument that there were two issues, there was error as to both. The error in giving instruction No. 1 goes to the first specification of negligence, and the error in refusing to permit testimony showing the general use of Myco-Gloss would relate to the second specification of negligence set forth in the petition.

The judgment will be reversed and cause remanded.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.