**Sivert LARSON, Plaintiff and Respondent,**

**v.**

**DeMar MEYER and Alfred Eggermont,
Defendants and Appellants.**

No. 8169.

Supreme Court of North Dakota.

May 13, 1965.

Nilles, Oehlert & Nilles, Fargo, for defendants and appellants.

Roy A. Ployhar, Valley City, for plaintiff and respondent.

TEIGEN, Justice.

This is an appeal from an order denying defendants' alternative motion for judgment notwithstanding the verdict or for a new trial in a wrongful death action.

The action was brought by the plaintiff, as the surviving husband, for the use and benefit of himself and the surviving children, pursuant to the provisions of Chapter 32–21 of the North Dakota Century Code. The action was premised on the alleged negligence of the defendants. The defendants denied the allegation of negligence and affirmatively pleaded contributory negligence and assumption of risk. The case was tried to a jury and a verdict was returned in favor of the plaintiff.

At the close of the plaintiff's testimony, and again at the close of all of the testimony, plaintiff moved for a directed verdict which was overruled. The term of the district judge, who presided over the trial, expired before the motion for judgment notwithstanding the verdict or in the alternative for a new trial was heard. It was heard and denied by one of the other district judges in the district. It is from this order that the appeal is taken.

The issues on this appeal relate to the sufficiency of the evidence and several assignments of errors of law.

The defendants assert the evidence shows conclusively, as a matter of law, that there is no liability on their part. They assert the evidence is insufficient to support a finding by the jury of negligence on the part of the defendants, and that it conclusively establishes contributory negligence of the deceased or that she assumed the risk as a matter of law. They also assert that prejudicial error occurred during the course of the trial in that the court misinstructed the jury, including a failure to instruct in any manner on the affirmative defense of assumption of risk; that error occurred in the admission of certain evidence; and that the court erred in refusing to grant a mistrial following certain remarks of counsel.

The defendant DeMar Meyer is the owner of several trucks. He contracts to haul milk for various farmers to Fairmont Foods, a creamery located at Moorhead, Minnesota. He had established several routes and the plaintiff, Sivert Larson, was one of his customers on the north route located in the Binford-Cooperstown area. The defendant Alfred Eggermont was employed by the defendant Meyer as one of his drivers.

On May 14, 1962, the defendant Eggermont, driving one of the defendant Meyer's trucks, had mechanical trouble with the 1957 International truck which he was driving. He had left Valley City, North Dakota, where the defendant Meyer operated his business, about 7:00 a. m. He would ordinarily have finished his route and arrived back at Valley City about 6:00 p. m. When he was at the Rorvig farm, northeast of Binford, he discovered that a part of the clutch linkage on the truck which he was operating needed repair. It was broken and he could not get the truck into reverse. He drove the truck to Edlund Motors at Binford about 10:00 a. m. After authorization was obtained from the defendant Meyer by telephone, the clutch linkage was repaired by welding.

The defendant Eggermont then continued on the milk route. He picked up milk at seven or eight farms and arrived at the plaintiff's farm between 4:30 and 5:00 o'clock p. m. The truck, which carried a 2,000 gallon milk tank, was about three-fourths full. It was driven to a point about 100 feet on the east side of the plaintiff's barn and milkshed and stopped. Eggermont then attempted to back the truck up to the milkshed located at the northeast corner of the plaintiff's barn so that the milk in the plaintiff's containers, located in the shed, could be emptied into the truck. There was a slope from the barn to the east. He found he was unable to put the truck into reverse gear as the clutch linkage had broken again at the same point where it had been welded by Edlund Motors.

The plaintiff was the owner of a WD-45 Allis-Chalmers tractor. He had been using it that day in the field. He had removed the drawbar from the tractor so that the field cultivator could be attached. The plaintiff had been cultivating but, shortly before the defendant Eggermont arrived, he had disconnected the field cultivator in the field and had driven the tractor home where he left it standing near the house. The drawbar had not been replaced. The drawbar of the tractor was designed and placed on the tractor for the purpose of attaching the tractor to farm implements or other objects to be pulled by the tractor.

Mrs. Larson came to where the truck stood. There was a conversation between Mrs. Larson and the defendant Eggermont. Following the conversation, Mrs. Larson went to the house where the tractor stood and drove it to where the truck was standing and backed the tractor up to the back of the truck. A log chain was attached by the defendant Eggermont to the trailer hitch located at the back of the truck and the other end was attached to the "lift bar" located at the back of the tractor. The log chain was eight to ten feet long. The "lift bar" is located at the rear of the tractor and is about two feet above the drawbar when it is in place. The "lift bar" is not intended for pulling. It is a part of the hydraulic equipment of the tractor used for lifting and carrying loads with a large fork or scoop attached to movable arms that extend in front of the tractor.

The defendant Eggermont got into the cab of the truck, released the emergency brake, put the truck in neutral, and signalled to the plaintiff's nine-year-old daughter, who was standing nearby, that the truck was ready to be pulled. She in turn signalled her mother. Mrs. Larson then started the tractor forward for the purpose of pulling the truck backward toward the milkshed. The "lift bar" on the tractor was higher from the ground than the trailer hitch on the truck and the ground upon which the truck and tractor stood sloped to the east. Thus, the tractor was pulling in an upgrade position. The truck with its load of milk weighed between 19 and 20 thousand pounds. Its gross weight was considerably heavier than the weight of the tractor. The location of the "lift bar" at the back of the tractor is above the center of the rear wheels of the tractor. Consequently, when backward force is applied to the "lift bar," particularly in a downward angle, it results in a lifting effect of the front end of the tractor. When Mrs. Larson started the tractor forward, the log chain tightened and backward pressure was exerted on the "lift bar." When the rear wheels of the tractor moved forward under the tractor's

power, the only pulling force the tractor could exert was the equivalent of a leverage force necessary to lift the weight of that part of the tractor located in front of the center of the rear wheels. Under such circumstances, if sufficient power is applied, the front of the tractor is pulled upward and, if power is continued to be applied, it will cause the tractor to tip over backwards.

The defendant Eggermont was seated in the cab of the truck. He was watching the tractor in the side rear-view mirror of the truck. He testified he could not see the back part of the tractor but that he could see the front part thereof. He testified the tractor moved the truck a short distance but then the front wheels of the tractor lifted from the ground and returned again. Suddenly, the front wheels lifted again and the tractor tipped over backwards, the front part striking the rear of the milk truck. Mrs. Larson, the plaintiff's wife, who was operating the tractor, was crushed under the weight of the tractor and was killed. It is for her wrongful death that the plaintiff sues.

The defendant Meyer, the owner of the milk truck and employer of the defendant Eggermont, is an independent contractor. He contracts with the farmers in the area to haul their milk to the creamery at Moorhead. The farmers with whom he contracts pay him for his services and, by prearrangement, this charge is deducted from their milk checks by the creamery. The creamery buys the farmers' milk for which it pays the farmers.

■ Appellants' first specification of error is that the trial court erred in denying the motion for judgment notwithstanding the verdict. Upon a review of an order denying a motion for judgment notwithstanding the verdict, the question is whether the party making the motion was entitled to judgment on the merits as a matter of law and, upon consideration of such question, this court must view the evidence in the light most favorable to the opposing party. Smith v. Nortz Lumber Co., 72 N.D. 353,

7 N.W.2d 435; Bormann v. Beckman, 73 N.D. 720, 19 N.W.2d 455; Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64; Glaserud v. Hoff, 75 N.D. 311, 27 N.W.2d 305; Knudsen v. Arendt, 79 N.D. 316, 56 N.W. 2d 340; Lund v. Knoff, N.D., 85 N.W.2d 676, 67 A.L.R.2d 1110; Levi v. Montgomery, N.D., 120 N.W.2d 383.

The only persons present at the scene of the accident were the defendant Eggermont, the plaintiff's nine-year-old daughter Janet, and Mrs. Larson.

It is not disputed that Mrs. Larson's death was caused by the circumstances as heretofore related. Neither is it disputed that, under the circumstances as they existed, one of the immediate causes of the accident was the fact that the log chain had been attached to the "lift bar" of the tractor.

The plaintiff in his complaint has alleged and now maintains that the evidence establishes facts from which the jury could properly conclude that the defendant Eggermont requested the deceased, Mrs. Larson, to assist him in pulling the truck toward the barn, using the plaintiff's tractor, and that she attempted to carry out this request under the direction and control of the defendant Eggermont. Plaintiff alleges that the negligence of Eggermont in attaching the chain to the "lift bar" of the tractor was the proximate cause of the death. In his complaint the plaintiff alleges:

"That the defendant, Alfred Eggermont, requested the deceased, Joyce H. Larson, to assist him in pulling the truck in a backward direction toward the barn so that he could load the milk and asked her to drive and operate plaintiff's tractor so as to pull said truck back toward the barn. That the deceased proceeded to drive said tractor from near the house to the barn and toward the rear of the milk truck and that the defendant, Alfred Eggermont, attached a chain on the rear axle of the truck to a part of the hydraulic ram on said tractor which is close to the rear axle of the tractor thereby causing the tractor to become unbalanced and top-heavy when pulling. That thereafter the deceased while under the direction of the defendant, Alfred Eggermont, did attempt to pull said truck in a backward direction and that as a result of the careless and negligent method and manner of fastening said chain to the tractor, the forward motion of the tractor caused it to overturn and tip over in a backward direction and fall on the deceased, Joyce H. Larson."

The defendants deny that Eggermont requested the deceased to assist him in pulling the truck and also deny that Eggermont attached the chain to the "lift bar" of the tractor as a voluntary act, but claim the evidence establishes that he was directed by the deceased to attach it to the "lift bar."

In short, plaintiff maintains the operation which caused the accident was directed by and under the control of the defendant Eggermont. The defendants maintain the evidence establishes that the direction and control of the operation was in the hands of the deceased, Mrs. Larson.

The plaintiff introduced no direct evidence to prove the defendant Eggermont directed or controlled the deceased in this operation but contends the facts are sufficient to permit an inference that he did so. In support of this contention, he points out that the record shows that the defendant Eggermont was late in completing his milk route that day; that he had the responsibility to gather the milk and bring it to the processor; that he had the responsibility to empty the milk containers in the Larson milkhouse so that the evening's milking could be done; that Eggermont took the log chain from the truck and attached it first to the trailer hitch of the truck and then to the "lift bar" of the tractor; and that he got into the truck, readied it to be pulled, and nodded to plaintiff's nine-year-old daughter so she could notify her mother to start. He also points out that the evi-

dence establishes that Mrs. Larson had been instructed in the operation of tractors by her husband, that she knew she should never hook anything on a tractor "high like that," and that he had explained to her about tractor accidents.

The defendants maintain the evidence does not establish a case of actionable negligence against these defendants. They argue there is no evidence proving the defendants were responsible for the accident, there was no evidence showing or establishing a duty owing between the decedent and the defendants or either of them, or that the decedent was a volunteer.

The defendant Eggermont was permitted to testify as to the transaction between himself and the deceased, Mrs. Larson. He testified that when he found he was unable to back the truck toward the milkshed, Mrs. Larson came to where the truck was standing; that he asked where he could find her husband and she replied he was in the field either picking rocks or getting hay; that Mrs. Larson then volunteered to pull the truck but Eggermont declined and stated he would prefer to get her husband to do it but she stated she was in a hurry to start the milking and, because it was getting late, she told him she would pull the truck with the tractor. Eggermont testified she then went to get the tractor which was standing near the house and backed it up to the back of the truck, whereupon Eggermont attached the log chain to the truck and started to crawl under the tractor to attach the other end of the log chain to the snap coupler. The snap coupler is a safe place to hook the chain as it is located under the tractor. It is that part of the tractor into which the drawbar attaches. Eggermont maintains he was told by Mrs. Larson not to hook it there as it would break and that she then directed him to hook the chain to the "lift bar" of the tractor by pointing to it and saying "hook it there."

Defendants also maintain that after the towing operation commenced, it was completely under the control of the decedent, who was driving her own tractor, and she was in full control of its operation.

The record establishes that the decedent was 37 years of age and had known how to operate a tractor for over 18 years, and that the defendant Eggermont was 22 years of age and first operated a tractor when he was 10 or 12 years of age. The evidence does not establish how much experience either of them had in tractor operations but the defendant Eggermont admits he knew it was wrong to hook a chain to the "lift bar" of the tractor for the purpose of pulling but thought the truck could be pulled this way.

The plaintiff's daughter Janet, who was then nine years of age and at the scene when the accident happened, testified very briefly. She testified that it was arranged Eggermont would signal her when the truck was ready to be pulled, that he did so, and that she in turn signalled her mother to start the tractor. She testified the tractor did pull the truck a few inches and that the tractor overturned upon her mother. Eggermont testified the truck was pulled one to one and one-half feet before the tractor tipped. He testified that he could see the front of the tractor in the rear-view mirror of the truck, that he saw the front end lift from the ground one and one-half to two feet and return again, that the front then lifted again and the tractor tipped over backwards. Janet Larson was not asked about this, although she was present at the time.

The evidence establishes that the plaintiff had owned the tractor used in this towing operation since 1953, that it had been operated by his wife on occasion during that period of time, that she had driven tractors in the field, that she had hauled grain, that she had pulled cars and farm trucks to start them, that she had pulled a manure spreader, and that she had pulled milk trucks in their yard.

■ Viewing the evidence in the light most favorable to the verdict requires that

all of the evidence favorable to the plaintiff, and all inferences and conclusions which can reasonably be drawn from such evidence favorable to the plaintiff, are construed to be true. Levi v. Montgomery, supra.

The trier of the facts, which in this case is the jury, is not required to accept the uncontradicted testimony of the defendant Eggermont because he is an interested party. Keller v. Reichert, 49 N.D. 74, 189 N.W. 690; Hughes v. Wachter, 61 N.D. 513, 238 N.W. 776, 100 A.L.R. 255; Janssen v. Kohler, 71 N.D. 247, 299 N.W. 900; Stormon v. Weiss, N.D., 65 N.W.2d 475; Ives v. Hanson, N.D., 66 N.W.2d 802; Fleck v. State, N.D., 71 N.W.2d 636; and Bergley v. Mann's, N.D., 99 N.W.2d 849.

The defendants claim there is no evidence from which it may be determined that the defendant Eggermont owed a duty or obligation to Mrs. Larson. It is elementary to establish actionable negligence that the plaintiff prove a duty or obligation on the part of the person charged with negligence and a breach of such duty. It must be a duty to exercise care or to protect the deceased from injury. Where there is no legal duty or obligation, there cannot be actionable negligence. Both negligence and care are relative to duty. Therefore, negligence standing alone without a duty does not constitute actionable negligence. The first requisite in establishing actionable negligence is to show the existence of the duty which it is alleged has not been performed or was negligently performed. O'Leary v. Brooks Elevator Co., 7 N.D. 554, 75 N.W. 919, 41 L.R.A. 677; 65 C.J.S. Negligence § 4; 38 Am.Jur., Negligence, Sec. 12.

The jury could disbelieve Eggermont's testimony that Mrs. Larson directed him in his actions. They could also disbelieve him when he testified that Mrs. Larson insisted she would pull the truck. If the trier of the facts chose to disbelieve Eggermont's

testimony in respect to direction and control, there remains no direct evidence in the record on the question of direction or control. Furthermore, we find no circumstantial evidence from which an inference can be drawn that the defendant Eggermont exercised direction or control. Under these circumstances, the only reasonable inference is that the deceased and the defendant Eggermont were engaged in a joint enterprise for the common purpose of pulling the milk truck to the milkshed so that the plaintiff's milk containers could be emptied into the tank of the truck.

The question then arises: Is the evidence sufficient to permit a finding that the defendants owed a duty to the deceased?

Generally the negligence of a person engaged with others in a joint or common enterprise is imputed to each of the others. However, it is well established that this doctrine has no application to actions brought by one member of a joint enterprise against another to recover for injuries due to the latter's negligence. 65 C.J.S. Negligence § 158; 38 Am.Jur., Negligence, Sec. 238; 44 A.L.R. 785; 61 A.L.R. 1232; 62 A.L.R. 442; 85 A.L.R. 632.

It appears clear that when an action is brought by one member of the enterprise against another, it is not proper to apply the doctrine of imputed negligence. To do so would be to permit one guilty of negligence to take refuge behind his own wrong.

Each participant in a joint enterprise owes the duty of ordinary care to his coadventurers. O'Brien v. Woldson, 149 Wash. 192, 270 P. 304, 62 A.L.R. 436; Alexiou v. Nockas, 171 Wash. 369, 17 P.2d 911; 38 Am.Jur., Negligence, Sec. 238.

For the reasons set forth, we find it is a jury question as to whether or not the defendants were negligent and the evidence does not, as a matter of law, establish that there is no liability on the part of the defendants.

The defendants next urge that the evidence, as a matter of law, conclusively establishes that the deceased was contributorily negligent or that she assumed the risk. This argument is premised on the force of the testimony of the defendant Eggermont ·that the deceased insisted on pulling the truck and, although the defendant Eggermont resisted and wanted to have the deceased's husband help him, she nevertheless prevailed and directed the hooking of the log chain to the "lift bar" of the tractor. These facts, coupled with the fact that the deceased was the operator of and had full control of the tractor with which she attempted to pull the truck, establish conclusively, as a matter of law, the contributory negligence or assumption of risk by the deceased. If the uncontradicted and uncorroborated testimony of the defendant Eggermont had to be believed by the jury, the argument would have much merit. However, as we have pointed out earlier in this opinion, the jury was not required to believe the testimony of Eggermont for the reason that he was an interested party to the action. If the jury chose not to believe his testimony, the only evidence remaining to support a claim of contributory negligence or assumption of risk for consideration by the jury were the following facts: the defendant Eggermont hooked the chain to the "lift bar" of the tractor, the deceased was the driver of the tractor and in control thereof, and the testimony of the deceased's husband proving that he had told her "never to hook it up high like that." This evidence, we do not believe, is sufficient to permit a conclusion that reasonable men could not differ and we are constrained to hold that it was a question for the jury.

The jury by its verdict found the defendants negligent and the deceased was not contributorily negligent. Where there is evidence of negligence on the part of the defendants, as we believe there was in this case, and the only evidence of contributory negligence was in the form of testimony of an interested party whom the jury must not have believed, their findings will not be disturbed by this court. Levi v. Montgomery, supra.

This disposes of the assignments of error based on the insufficiency of the evidence. There was evidence in the record from which a jury could determine that the defendants, under all of the circumstances, were. negligent; that their negligence was the proximate cause of the accident which caused the death of Mrs. Larson; and that Mrs. Larson was not contributorily negligent and did not assume the risk.

The verdict, therefore, will not be disturbed in the absence of legal error. The defendants have assigned as errors of law: errors in the instructions to the jury, error in admitting into evidence over the plaintiff's objection a family picture, error denying defendants' motion for mistrial based on prejudice and misconduct of counsel, error in failure of the court to give certain requested instructions, error in denying defendants' offer of proof regarding an experiment, and error in the admission of certain testimony. They ask that a new trial be granted.

The defendants have specified it was error for the court to instruct the jury on pecuniary loss, in part, as follows:

"It consists not only of the loss of financial assistance which the beneficiaries might reasonably be expected to have received from the deceased *had her career not been shortened by the act of the defendants,* but also the loss of other things which have a pecuniary worth." (Emphasis supplied.)

The defendants argue that this had the effect of directing a verdict for the plaintiff against the defendants.

The instructions to the jury are deemed excepted to because it appears from the proceedings that the court did not submit the proposed instructions and ask that

exceptions be noted before they were given. Rule 51(c), N.D.R.Civ.P.Counsel argues this part of the instructions was particularly prejudicial for the further reason that, although the assumption of risk was pleaded by the defendants, the court failed to instruct in any manner on this defense. They argue the objectionable words contained in the challenged instruction are "by the act of the defendants, * * *." The defendants argue the instruction directs the jury to find that it was the act of the defendant that shortened the life of the decedent; whereas, this was a main issue in the case. They argue it amounts to a direction that the decedent did not cause her own death. The challenged part of the instruction is lifted from the instructions defining pecuniary loss. It is prefaced with the statement:

"If, under the court's instructions, you find that plaintiff is entitled to recover, you will award him such damages as you find proportionate to the injury to the plaintiff and his children resulting from the death of Joyce H. Larson. Such damages may only be awarded for pecuniary loss."

Standing alone we think the words singled out by the defendants would be error; however, in view of the full instructions given by the court, we do not find them prejudicial. The court instructed that negligence is never presumed and that the burden was upon the plaintiff to prove by a fair preponderance of the evidence that the negligence of the defendants was the proximate cause of the death. The court instructed that negligence, to be actionable, consists of three essential elements and when brought together unitedly constitute actionable negligence. These elements are: (1) a duty or obligation on the part of the defendants to protect the deceased from injury; (2) a failure on the part of the defendants to perform that duty; and (3) an injury to the plaintiff's wife resulting proximately, directly, and without an intervening cause, from the

failure of the defendants to perform that duty. The court instructed on the defense of contributory negligence and advised the jury that, if they found the deceased contributorily negligent, it would bar any recovery by all of the parties plaintiff, regardless of the defendants' negligence, if any; and that the court also instructed the jury it could not award damages for mere accidents. Following these instructions it gave the instruction on the measure of damages complained of, prefaced however as set forth above that before they were to be considered there must first be a finding of liability.

The instructions of the court must be considered in their entirety. Error cannot be predicated on parts thereof where the charge as a whole is not subject to the objection made to a part thereof. Moe v. Kettwig, N.D., 68 N.W.2d 853; Buchanan v. Minneapolis Threshing Machine Co., 17 N.D. 343, 116 N.W. 335. When isolated sentences contain an erroneous statement which, when taken with the rest of the charge, could not have misled the jury, the error was harmless and does not warrant a reversal. Moe v. Kettwig, supra; Ferderer v. Northern Pacific Railway Co., 77 N.D. 169, 42 N.W.2d 216; Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; McBride v. Wallace, 17 N.D. 495, 117 N.W. 857.

The statement of the court contained in this instruction singled out as being erroneous must be considered in connection with its context and the instructions as a whole. Haslam v. Babcock, 71 N.D. 363, 1 N.W.2d 335.

Considering the instructions as a whole, the part of the instructions singled out in this case as being error, even if error, is not prejudicial error so as to constitute a reversible error.

The defendants cite Spitler v. Montgomery Ward & Co., Ohio App., 128 N.E. 2d 445, in support of their contention that the court erred in instructing the jury that certain facts existed, but which facts were

actually in dispute in the trial and a question for the jury to determine. That case is distinguishable from the instant case as the instruction in the Spitler case went directly to the cause of action itself. In the instant case the part of the instruction challenged deals with a definition of pecuniary loss, providing the jury has already found that actionable negligence existed which was the proximate cause of the death and that the deceased was not contributorily negligent. We do not believe that case is an authority in this case.

The defendants also claim the court erred in instructing the jury on life expectancy as follows:

"The number and ages of the children dependent upon the widower after the death of the decedent and the age, circumstances, condition and relation of the widower and children to the deceased. In this connection the court instructs the jury that at the time of the death of the decedent, Joyce H. Larson, she had a life expectancy of 30.35 years."

They point out the instruction is not in accordance with Section 31–08–05, N.D. C.C., which provides:

"Statistical tables admissible to establish life expectancy.—In all cases in which the probable duration of the natural life of any person from and after a particular age is material, standard statistical tables of mortality are competent evidence of such probable duration or expectation of life."

The objection is that the court in its instruction established a set number of years of life expectancy; whereas, the statute permits the use of the statistical tables as competent evidence to establish probable duration or expectation of life. It is argued that because the instruction did not take into consideration the decedent's exposure to danger, as well as occupation, habits, and activities, the instruction as given resulted in a directed verdict as to the life expectancy of the decedent and it was, therefore, prejudicial.

The instruction challenged was one of a series of factors which the court stated may be considered in determining pecuniary loss. The factor immediately following that part of the instruction objected to states that the jury may consider "The characteristics and habits of the deceased, such as the habits of home life, industry, mental and physical capacity, health, condition in life, activities, disposition to frugality, and contributions to the welfare of the family."

The evidence does not establish, and it is not contended, that the deceased had any physical infirmities, that she was exposed to danger, and that she did not live the normal life of a farm woman. Neither was there any evidence to prove she might not live the probable average remaining length of life of all persons of her age. There is no claim that the standard statistical tables of mortality, referred to by our statutes, state a different life expectancy than 30.35 years. The evidence does not establish as an issue the life expectancy of the deceased.

"In the absence of evidence tending to show that the person in question had a probability of life greater or less than that shown by the tables, they may be accepted as controlling." 20 Am. Jur., Evidence, Sec. 1215.

"It has been held, however, that mortality tables, if uncontradicted, should be controlling as to the expectancy of life, and such tables have been held controlling as to the life expectancy of one who was shown by the evidence never to have been sick prior to the injury which caused his death." 32A C.J.S. Evidence § 770.

Although we do not condone the statement of the court that "she had a life expectancy of 30.35 years" as being an accurate statement of the law authorizing the use of mortality tables (Section 31–08–05, N.D.C.C.), nevertheless where the instruction covers only one of a series of fac-

tors to be considered in determining pecuniary loss and is immediately followed by an additional instruction that the characteristics, habits, home life, industry, mental and physical capacity, health, condition in life and activities of the deceased may also be considered, the challenged instruction is not so prejudicial as to warrant a reversal, particularly where the condition of health has not been made an issue in the trial.

The defendants also complain that it was error to admit into evidence the group photograph of the Sivert Larson family. The photograph was a family Christmas card which showed the decedent, her husband, and their five daughters in a family grouping in the living room of their home. The card bore on its face the printed words "Best Holiday Wishes From Our House To Yours." It was also signed "Sivert Larsons." The admission of the photograph in evidence was objected to on the ground that it was an improper exhibit, that it was an attempt to inflame the passion and prejudice of the jury, and that the health of the deceased is not in issue. The objection was overruled and the photograph was admitted in evidence. The foundation testimony for the introduction of the exhibit was established by the witness Sivert Larson, husband of the deceased and plaintiff in this action. He testified this was a family picture taken for Christmas cards for 1961, which was the Christmas immediately preceding the trial. This case went to the jury on December 20, 1962. At the request of counsel, he placed a mark on the exhibit identifying the deceased. He was then asked:

"Q. Is this exhibit a fair representation of the family as it existed at that time; which was approximately a year ago?

"A. Yes, it is."

■ We have held that the admission or rejection of photographs is largely within the discretion of the trial court. Wyldes v. Patterson, 31 N.D. 282, 153 N.W. 630.

■ There was no dispute as to the identity of the deceased, nor was there any dispute as to her health or physical condition. Just what the purpose was of offering in evidence this Christmas card photograph is not apparent from the record. We can only assume it was to get before the jury a matter not germane to the issues and thereby arouse sympathy, passion, and prejudice in the minds of the jury. The admission of the Christmas card family photograph with the season's greetings contained thereon would naturally be prejudicial on the question of damages and occurring just before the Christmas season, as it did here, it would also tend to sway the jury in weighing the testimony on the main issue.

In a wrongful death action, our statute provides:

> "the jury shall give such damages as it finds proportionate to the injury resulting from the death to the persons entitled to the recovery." Section 32–21–02, N.D.C.C.

■ In construing this statute, this court has held that in an action thereunder damages are to be awarded only for pecuniary loss and may not be awarded for loss of society and companionship or in the way of solatium, but the plaintiff is entitled to recover the pecuniary value of services which the beneficiary or beneficiaries under the statute might reasonably have expected from the person on account of whose death the action was brought. Stejskal v. Darrow, 55 N.D. 606, 215 N.W. 83, 53 A.L.R. 1096; Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897.

We feel this exhibit served to arouse the passion and sympathy of the jury in weighing the evidence on the main issue, particularly when the trial was held during the pre-Christmas season. It was, therefore, error which was prejudicial and we hold the court abused its discretion. See Annotation 74 A.L.R.2d 932.

The defendants also assign as error two specifications of alleged misconduct by the

plaintiff's attorney. Following each of the alleged occurrences of misconduct, counsel for the defendants, out of the presence of the jury and in the chambers of the court, moved for a mistrial which was denied.

The first specification of misconduct occurred at the close of the introduction of evidence. The defendant Eggermont was on the witness stand as a witness for the defense. In describing the circumstances during the direct examination, the witness attempted to relate the conversation, between himself and the deceased. The plaintiff objected, which objection was properly sustained on the ground of the "dead man's statute." On cross-examination, however, the defendant Eggermont did testify as to some of the conversation had between himself and the deceased. Upon redirect examination the witness was permitted to testify at length relative to such conversation on the theory that the plaintiff had waived the so-called "dead man's statute" when the witness was permitted to testify relative to a portion of the conversation on cross-examination. The redirect examination was followed by a recross-examination by counsel for the plaintiff and was finally terminated by further redirect examination by the attorney for the defendant. The alleged error occurred in this last redirect examination. The defendant Eggermont testified that the deceased directed and controlled the decisions, that it was she who insisted she would pull the truck, and that she directed the place where the log chain should be hooked to the tractor. Eggermont testified he had attempted to attach the chain to the snap coupler of the tractor, which is located underneath the tractor and would have been a safe place to attach the chain. On cross-examination he admitted he knew it was wrong to attach the chain to the "lift bar" but that he had been directed by the deceased to hook it there and, furthermore, he thought the truck could be pulled with a chain in that position. The questions and answers on the redirect examination

that brought about the charge of misconduct are as follows:

"Q. And then as to what Mr. Ployhar doesn't want in here, will you tell us why you did that again?

"A. Because I was ordered to hook it right on that bar because she didn't want it hooked on that snap coupler.

"MR. PLOYHAR: Ordered by a dead woman to do it?

"A. Huh?"

The attorney for the defendant objected on the ground that this was a highly improper and prejudicial comment. The court stated:

"THE COURT. Well, gentlemen, you attorneys get heated up. We all do once in a while, I guess. I think we will stop it at that. Do you want an objection to it?"

Thereupon further proceedings were had out of the presence of the jury. Both parties rested without the introduction of any further evidence. In the chambers of the court, the attorney for the defendants moved for a mistrial on the ground that this constituted misconduct on the part of the attorney, which motion was denied.

The court, in instructing the jury, stated:

"If counsel upon either side during the course of trial or during the heat of argument have made any statements not warranted by the evidence, you should wholly disregard such statements in arriving at your verdict."

Counsel for the defendants did not ask for a cautionary instruction, nor did he request the court to admonish the jury. It appears the objection was merely made a matter of record.

The granting of a mistrial is an extreme remedy and voids all proceedings taken in a case up to that time. The practice should be resorted to only when

further proceedings would be productive of great hardship or manifest injustice. Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282. That conclusion cannot be reached in this case. The trial court took such measures as he thought necessary under the circumstances to cure any error when, in the presence of a jury and immediately following the statement made by counsel, he said:

"Well, gentlemen, you attorneys get heated up. We all do once in a while, I guess. I think we will stop it at that. Do you want an objection to it?"

The court then retired to chambers at the request of the counsel for the defendants in order that the motion might be made out of the presence of the jury. No further evidence was introduced in the case and no admonishment was requested.

The next step in the trial of the case was the arguments to the jury followed by the instructions of the court in which he gave the cautionary instruction quoted above. We do not feel the court abused its discretion.

The second assignment is that the trial court erred in denying the defendants' motion for a mistrial on the ground of misconduct of the plaintiff's attorney in his argument to the jury. This specification is premised on selected statements set forth in the motion for mistrial. No objection was made during the course of the argument. The motion for mistrial was made in the chambers of the court out of the hearing of the jury following the completion of the arguments but before instructions were given. The motion was denied and there was no request that the jury be admonished or that special instructions be given. The specifications of misconduct consisted of a request that the jurors place themselves in the position of the defendant Eggermont when he hooked the chain to the tractor and that, in referring to the testimony of the defendant Eggermont, counsel made the statement: "It is very

easy to blame someone who is not here. Sometimes we will do anything to save our hides." Counsel also alleges three other acts of claimed misconduct which acts are not reported in the partial transcript of the argument certified to this court.

The defendants also urged it was misconduct to have said "The defendants haven't seen fit to do anything about it up to now and therefore you [the jury] should determine now that they do something about it" and that the defendants were using a "fabricated story." They also charge that counsel's handing of the Christmas card picture of the family to the jury during the argument compounded the error of its admission into evidence. Other acts of alleged misconduct are also specified but were not argued.

■ None of these alleged acts of misconduct are reported in the partial transcript of the arguments nor made a part of the settled statement of the case. They are not before us and we will not consider them on this appeal.

The statements suggesting that the jurors place themselves in the position of the defendant Eggermont at the time he hooked the log chain to the tractor and the statement, in effect, that sometimes one will do anything to save his hide are contained in the partial transcript and were made a part of the settled statement of the case.

Viewing this partial transcript, we find that counsel for the plaintiff, after referring to the evidence describing that the chain was hooked to the "lift bar" of the tractor by the defendant Eggermont and having referred to his testimony that he was directed to hook it there by the deceased, argued to the jury that the defendant Eggermont should have known better and then stated:

"Would any one of you hook a chain onto a tractor in that position when you knew there wasn't any drawbar on the tractor? Would you be guilty of

that kind of negligence? No, I know you wouldn't."

Later in the argument, after asking the jurors to consider the matter under all of the facts and circumstances shown, he stated:

"Would you have hooked that chain on that tractor under those conditions like Eggermont did? Would you have done that? If you can answer in your own conscience that you would have done the same thing, then Eggermont is right. But if you can't answer in your own conscience that you would have done the same thing, and feel that it was wrong, as Eggermont testified that he felt it was wrong, then Eggermont's fault has not been excused."

This statement was immediately followed by the second allegation of misconduct when counsel stated:

"As I said before, it is very easy, of course, to blame it on somebody else. Very easy to blame it on somebody that isn't here. Very easy to tell you what she may have said at that time. *Sometimes, you know, we will do most anything to save our own hides.* But I don't think he can fool you. I don't think he can convince you that you should lay the blame on somebody else. Who isn't here to defend herself." (The emphasis added is the challenged portion of this argument.)

The defendants' principal argument is that it was prejudicial error and misconduct to ask the jury to invoke the so-called "golden rule." We will consider this first.

This court has not had occasion to pass on this question in any previous case that we have found and none has been cited to us. An exhaustive annotation is contained in 70 A.L.R.2d, commencing on page 935. It states on page 937 thereof that generally:

"It has been recognized in many cases that the prejudice resulting from

counsel's argument, in a civil case, urging the jurors to place themselves in the position of one of the litigants, or to allow such recovery as they would wish if in the same position, constituted reversible error."

Cases are cited to support this statement from the States of Illinois, Iowa, Kentucky, Michigan, Minnesota, Missouri, Texas, Virginia, and Wisconsin. The annotation also cites many cases in which it was recognized that counsel's argument urging the jurors to place themselves in the position of the litigant, or to allow such recovery as they would wish if in the same position, was improper, but that the opposing party was not entitled to relief on the ground of prejudice in view of the circumstances present. It cites cases from Alabama, Arkansas, California, Illinois, Kentucky, Michigan, Missouri, Ohio, Pennsylvania, Texas, and West Virginia holding that under the circumstances reversal or new trial was not required.

On the matter of misconduct of counsel, we have held that the determination of whether or not misconduct of counsel is prejudicial rests primarily in the discretion of the trial court (Leach v. Nelson, 50 N.D. 538, 196 N.W. 755; Smith v. Riedinger, N. D., 95 N.W.2d 65); that the exercise of the discretion of the trial court in determining whether a new trial shall be granted for the misconduct of counsel for the successful party in his argument to the jury will not be disturbed, unless the court has abused its discretion (Burdick v. Haggart, 4 Dak. 13, 22 N.W. 589); and that although remarks of counsel made for the purpose of arousing sympathy or prejudice are improper, nevertheless it is not every improper remark made by counsel during argument that requires a reversal as being prejudicial (Lund v. Upham, 17 N.D. 210, 116 N.W. 88; Smith v. Riedinger, supra).

■ Where the defendants allege misconduct on the part of an attorney in his argument to the jury and rely on the

same as grounds for mistrial, counsel should not only object to the statement but request the court to take action by cautionary instructions to the jury or some suitable action. State v. Knudson, 21 N.D. 562, 132 N.W. 149; Quam v. Wengert, N.D., 86 N.W.2d 741.

■ Counsel is allowed great latitude in presenting his arguments to the jury, subject to the regulation and control of the trial court whose duty it is to confine the arguments within proper limits. Tice v. Mandel, N.D., 76 N.W.2d 124; King v. Railway Express Agency, Inc., N.D., 107 N.W.2d 509.

■ It is only where it appears that the alleged misconduct of counsel will deprive a party of a fair trial that relief should be granted by the court. Quam v. Wengert, supra; King v. Railway Express Agency, Inc., supra.

We find no appeal to the sympathy of the jury in the challenged statement, nor do we construe it as being inflammatory.

The next step in the trial following the denial of the motion for mistrial was the delivering of the instructions of the court to the jury. The court instructed on ordinary care as being that degree of care which a person of ordinary prudence would exercise under the same or similar circumstances in the same or similar transactions or affairs of life, and that negligence is the failure to exercise ordinary care as that term was defined to the jury. The court also instructed the jurors that they must accept the law as it is given to them by the court in the instructions and to apply that law to the facts as they shall find them to have been proven; and that if counsel upon either side during the course of the trial or during the heat of argument has made any statement not warranted by the evidence, they should wholly disregard such statement in arriving at their verdict.

In Hoffer v. Burd, supra, we held:

"The declaration by the trial court of a mistrial is an extreme remedy to be resorted to only when there is a fundamental defect in the proceedings of a trial or when something has happened during the course of the trial which makes it evident that further proceedings therein would be productive of manifest injustice. * * *"

■ We believe the court's instructions were sufficient to inform the jurors that, in determining the issue of negligence, they were to apply the rule of ordinary care as given them by the court and not make the determination on the basis of placing themselves in the position of the defendant. We, therefore, hold that, although the argument was improper in that it suggested to the jurors they apply their own standard of care in determining the question of negligence, in view of the clear instructions of the court as the next step in the trial, the damage, if any, was erased and was therefore not prejudicial. We believe the admonition of the court as contained in the court's instructions was sufficient to clear away any misconceived ideas the jurors may have possessed as a result of the improper argument.

■ We will next consider whether or not it was prejudicial error for counsel to have stated in his argument: "Sometimes, you know, we will do most anything to save our own hides." The challenged statement is lifted out of context and, reading it in connection with the subject matter on which counsel was arguing at the time (the argument is quoted supra), it is merely a comment of what counsel apparently considered a matter of common knowledge or a self-evident fact. Its purpose, undoubtedly, was to discredit the testimony of the defendant Eggermont that the deceased had directed the operations, including hooking the chain to the "lift bar" of the tractor, and goes to the reasonableness of his testimony. Because of the death of the other party to the transaction, there may be a natural presumption that the witness has not told the truth. Its purpose was to discredit the testimony of the litigant Egger-

mont. We do not find the statement prejudicial. Counsel has great latitude in his argument to the jury, subject however to the regulations and control of the court. The trial court did not find it prejudicial and we do not find it abused its discretion in denying a motion for mistrial or new trial. Tice v. Mandel, supra.

We come now to the next specification of error. The defendants specify it was error for the trial court to have failed and refused to instruct the jury on the affirmative defense of assumption of risk. The defendants in their answer pleaded assumption of risk as an affirmative defense; they also pleaded contributory negligence. They filed with the trial court their written request for an instruction on the defense of assumption of risk which was refused. The trial court in its summation of the issues in the case, based on the pleadings, stated to the jury:

"Defendants further allege that it was solely the negligence of decedent Joyce H. Larson that was the proximate cause of her death and further allege that the decedent was an experienced farm tractor operator and that she was familiar with the operation of a farm tractor and knew the hazards or dangers incident to the operation of a tractor and that decedent, having knowledge of the dangers and hazards incident to the operation of a farm tractor, especially with respect to pulling with a farm tractor, acquiesced in the pulling of the truck in question and voluntarily proceeded to attempt to pull the truck and that decedent thereby assumed the risk of operation of the farm tractor and that the negligence of the decedent is imputable to the heirs at law, of which the plaintiff is one, and plaintiff is, therefore, barred from recovery."

Nowhere in the instructions of the court or otherwise did it rule that the defense of assumption of risk was not available to the defendants. It did not define assumption of risk, nor did it advise of its effect upon a decision of the case if the jury found the defense had been proven by a fair preponderance of the evidence. In fact, there is no reference in the instructions relative to the affirmative defense of assumption of risk following the summation of the issues as formed by the pleadings.

Exceptions to the instructions were not waived as the court did not present the written instructions to the attorneys before they were delivered to the jury, nor did the court ask that exceptions be taken.

■ The court did instruct on the affirmative defense of contributory negligence and counsel for the plaintiff in his oral argument to this court argued that the trial court, having fully instructed on the defense of contributory negligence, would serve no purpose to also instruct on the affirmative defense of assumption of risk. We cannot agree with this argument. There is evidence in the record from which we believe the jury may have found under a proper instruction that the deceased assumed the risk.

This court pointed out in Borstad v. LaRoque, N.D., 98 N.W.2d 16, that, in a guest case, there is a distinction between the affirmative defenses of assumption of risk and contributory negligence. The court in that case pointed out that various courts are divided on whether "assumption of risk" is merely a species of contributory negligence or constitutes a defense independent of the plaintiff's negligence; that, however, in a guest case, it is used as a defense in a case where liability of the host driver may otherwise be clear; and that, in this sense, "liability of the host upon any theory is taken for granted, and the question arises as to whether the guest passenger 'assumed the risk' of injury to herself in voluntarily entering or remaining in the vehicle when she knew of the disabling effect of the intoxication of the host driver." The same reasoning applies in the case at bar. Assuming that it was a negligent violation of duty for the defendant Eggermont to hook the chain

to the "lift bar" of the tractor, which is located immediately below the tractor seat upon which the deceased was seated, the question arises whether the deceased had knowledge of the danger and assumed the risk of injury to herself in voluntarily placing the tractor in motion and applying the power in an attempt to pull the truck. There is evidence in the record that the deceased had operated tractors on occasion for many years, that she had been taught to operate a tractor by her husband, and that he had told her never to "hook it up high like that." Pictures of the tractor introduced as exhibits in the case show that there was a clear view of the "lift bar" from the seat of the tractor where she was seated. The evidence also establishes the deceased was in full control of the operation of the tractor as its sole operator. The evidence shows that after the chain was hooked to the tractor, she attempted to pull the truck with the tractor and, while doing so, the front wheels lifted from the ground and returned again. Following this occurrence, the tractor tipped over backwards causing her death.

 It, therefore, appears that if the jury found the defendant Eggermont negligent, thus establishing liability, it may also have found, if instructed, the existence of the three elements of assumption of risk, to wit: (1) knowledge of a situation that was dangerous beyond that normally inherent in the operation of a tractor caused by hooking the chain to the "lift bar," (2) an appreciation of the danger and a voluntary choice to encounter it, and (3) injury proximately caused by the danger present. If they had so found, it would have barred recovery by this plaintiff. The defense of assumption of risk is defined in Borstad v. LaRoque, supra, and is stated as follows in the syllabus:

"The defense of assumption of risk, when applicable as a bar to recovery, operates independently of negligence and proximate cause, except merely to expose the injured claimant to the dan-

ger, whereas, it is an essential feature of the defense of contributory negligence that the negligence of the injured claimant be a proximate cause of the mishap and the resultant injury."

The claimed negligence of the defendant, as a proximate cause of the accident, was the hooking of the chain to the "lift bar" of the tractor. It exposed the deceased to danger. The jury may have found she then made a choice, made more or less deliberately, to pull the truck with the chain hooked in a dangerous place and, if they so found, it would negate liability on the part of the defendants without reference to the fact that the deceased may have acted with due care; whereas, contributory negligence implies a failure of the deceased to exercise due care. 38 Am.Jur., Negligence, Sec. 172; 65 C.J.S. Negligence § 117. Therein lies the distinction between the defense of contributory negligence and assumption of risk as it applies to this case.

 The defense of assumption of risk was pleaded and the jury was advised by the court that it was one of the issues in the case but the court failed to instruct on it. Under the circumstances of the case, this was a fatal error. This error is prejudicial and requires that a new trial be granted.

The defendants charge that the trial court erred in refusing to admit in evidence testimony relative to an experiment conducted a day prior to the trial. Foundation for its admission was laid through the testimony of the defendant Meyer. He testified that he was present and participated in an experiment on a street at Casselton, North Dakota, with a similar incline. They used the truck which was involved in the accident and a similar WD–45 Allis-Chalmers tractor. The experiment was conducted by placing the truck on a sloping hard-surfaced street with an incline similar to that in plaintiff's yard. The right front wheel was driven into a depression or ditch running along the side of the street on

which the truck was placed. The street had no curb or gutter and the ditch was used to carry off water. The tractor was backed to the truck and the same log chain was attached in the same manner and place to each of the vehicles at the time of the accident. The truck was loaded with the same amount of liquid as at the time of the accident but it contained water instead of milk. It was testified that water is two-tenths of a pound heavier per gallon than milk. The witness then testified he entered the cab of the truck and released the brakes and took it out of gear. Someone else was operating the tractor. He was asked to tell the jury whether or not the tractor was able to pull the truck from that position at that time. The question was objected to on the ground that there was no proper foundation laid, that it was too remote as to time and place, and that there was nothing to show that the experiment was conducted at a place similar to the place where the accident happened. It was also objected to on the ground that there is no dispute in the evidence but what the accident happened and, therefore, the experiment would not add anything or aid in any way to prove it did not happen.

Counsel for the defendants argued that, inasmuch as the evidence indicated that the tractor did not go over backwards until the truck had started to move backwards, they would be entitled to show that, if the tractor had the gas applied properly and the clutch released properly, the truck under the circumstances could have been pulled backwards in this way. The court sustained the objection and ruled the experiment was too remote, that insufficient foundation was laid to show it was similar in that the experiment was not conducted in the same area, and that it was not a soft terrain upon which the truck was standing in the experiment but it was a hard-surfaced road. The accident occurred on the soft ground of a farmyard.

Counsel for the defendants then advised the court that a second experiment had been conducted and asked permission to make an offer of proof in chambers out of the hearing of the jury. The offer of proof was made. It was similar as to the foundation evidence referred to above, except that the right front wheel of the truck was placed in a depression about two feet nine inches deep, instead of one foot six inches, as was the case in the first experiment. The court denied the offer on the ground that it too was too remote and not sufficient foundation was laid in the estimation of the court to fit all of the circumstances that occurred in connection with the happening of the accident. . The defendants argue that the rulings of the trial court are erroneous.

We held in Fisher v. Suko, N. D., 111 N.W.2d 360, that evidence of relevant experiments is admissible where they are shown to have been made under conditions substantially similar to those prevailing at the time of the occurrence to which they relate, but that admission of evidence of experiments is primarily within the discretion of the trial court and the exercise of that discretion will not be disturbed by an appellate court unless it has been abused.

We do not find the court abused its discretion. The accident occurred in May of 1962, and the experiment was carried out on December 17, 1962. The court found it was too remote as to time. This is true because in May, particularly in a farmyard, the ground will be soft and is not frozen; whereas, December is a winter month and the ground is frozen. Furthermore, the experiment was carried out on a hard-surfaced road. It appears the conditions were not similar. The differences may be of considerable importance to the success or failure of the experiment. These variations and conditions, we believe, are substantial. The admission of the evidence of the experiments is a matter peculiarly within the discretion of the trial judge and this discretion will not be interfered with unless it is apparent that it has been abused. 20 Am.Jur., Evidence, Sec. 755; 32 C.J.S.

Evidence § 587. It is clearly stated in these citations that the discretion of the trial court will not be interfered with by an appellate tribunal unless an abuse is clearly made to appear. We do not so find here. The trial court did not abuse its discretion in refusing to permit evidence of the experiment in this case.

We are agreed a new trial must be granted. For this reason we have also passed on the questions raised and argued by the appellant that may arise again on a retrial.

Judgment is reversed and a new trial granted.

BURKE, C. J., and STRUTZ, ERICK-STAD and KNUDSON, JJ., concur.